MARION F. EDWARDS, Judge.
 

 | ¡Plaintiff/appellant, Jeffrey Belton, filed a petition for damages for legal malpractice and tortuous misrepresentations. The underlying claim is that Mr. Belton had an action for medical malpractice against several physicians and West Jefferson Medical Center (“WJMC”) for injuries resulting from treatment for a bite from a brown recluse spider Mr. Belton suffered while working on his job as a postal worker. Mr. Belton was bitten on the temple by the spider and sought medical treatment at WJMC. He alleges that a misdiagnosis resulted in neurological toxic damages to the facial and cranial nervous system.
 

 Mr. Belton enlisted the services of Troy B. Broussard, A Professional Law Corporation (“the Broussard Firm”) in pursuing his claim against WJMC and the attending physicians, as well as his workers’ compensation claim. Mr. Belton initially met with Mr. Broussard in March 2002, about one month after the incident. Mr. Broussard accepted the representation and assigned Ann R. Baehr, a new associate with the Broussard Firm, as lead counsel for Mr. Belton.
 

 | sAccording to Mr. Belton’s petition, about one year later, Ms. Baehr advised Mr. Belton that the medical malpractice action had been filed and she was awaiting the expert physician’s report and would proceed with the matter when the report was obtained. However, in November 2003, Ms. Baehr advised Mr. Belton that no suit had been filed because the medical expert advised the firm that Mr. Belton did not have a cause of action in medical malpractice. Mr. Belton requested the return of his file from the Broussard Firm.
 

 Subsequently, in December 2004, Mr. Belton discovered that the letter from the medical expert giving his medical opinion that there was no medical malpractice had been written and backdated about one year at the request of Ms. Baehr just before she returned the file to Mr. Belton. Mr. Belton filed this legal malpractice action in December 2005 naming Troy Broussard, Ann Baehr, and the Broussard Firm as defendants.
 

 Mr. Belton also names Dr. Richard Buc-ci, a practicing physician in Mississippi, as a defendant in the lawsuit. According to the petition, Ms. Baehr induced Dr. Bucci, a long-time friend, to back date a letter to December 2002 in which Dr. Bucci opined
 
 *906
 
 that Mr. Belton had not suffered provable damages as a result of any medical malpractice by the treating physicians. This occurred in 2003 shortly before the prescriptive period on the legal malpractice claim ran out. Ms. Baehr then used that letter to convince Mr. Belton that he had no cause of action in medical malpractice.
 

 Mr. Broussard, Ms. Baehr, and the Broussard Firm filed exceptions of prescription and peremption with their answer to the lawsuit. Dr. Bucci filed exceptions of prescription and no cause of action and a motion for summary judgment.
 

 | ¿Subsequently, Mr. Broussard, Ms. Baehr, and the Broussard Firm filed a motion for summary judgment.
 
 [1]
 
 The memorandum in support of that motion re-urged the exception of prescription and additionally asserted that there was no underlying claim for medical malpractice; therefore, there was no claim for legal malpractice. Dr. Bucci filed a second exception of prescription and motion for summary judgment adopting the motion, memorandum, statement of facts, and all exhibits submitted in connection with the motion for summary judgment of his co-defendants.
 

 After a hearing, the trial court rendered a judgment granting the motion for summary judgment and dismissing Mr. Brous-sard, Ms. Baehr, the Broussard Firm, and Dr. Bucci from the action with prejudice. A timely appeal was taken from that judgment by Mr. Belton.
 

 The undisputed facts are that the alleged malpractice cause of action arose in February 2002. Legal representation was accepted by Mr. Broussard, Ms. Baehr, and the Broussard Firm in March 2002. No lawsuit for medical malpractice was filed by the defendants, and the medical malpractice action prescribed in February 2003. Ms. Baehr sent a written formal notice of withdrawal from Mr. Belton’s case on October 28, 2003, which stated that “[w]e do not have a sufficient amount of information in order to proceed with your case. Please be advised that it is in your best interest to retain new counsel of record as soon as possible.” In November 2003, Mr. Belton requested and received a legal complaint form from the Louisiana Attorney Disciplinary Board. However, Mr. Belton used it as a threat to obtain his legal file and did not file a formal complaint. In December 2003, Mr. Belton received his legal records from the Brous-sard Firm that included |sa letter from Dr. Bucci of Pascagoula, Mississippi, dated December 2, 2002, stating that he reviewed the medical record and found no malpractice. The letter was actually written in November 2003 and backdated. Mr. Bel-ton discovered that the letter was backdated in December 2004. This legal malpractice suit was filed on December 1, 2005.
 

 LAW AND DISCUSSION
 

 While all parties argue the merits of prescription and the cause of action in medical malpractice, we find that only the issue of prescription is before this Court. Although the judgment states that it is a grant of a motion for summary judgment, it is limited to prescription. We find the judgment on appeal, despite its language, is a grant of an exception of prescription. It appears the trial court found Mr. Bel-ton’s actions against all defendants had prescribed and, therefore, did not consider or rule on the motion for summary judgment on the issue of whether there is an underlying action for medical malpractice.
 

 
 *907
 
 Louisiana jurisprudence provides that, to establish a claim for legal malpractice, a plaintiff must prove: 1) the existence of an attorney-client relationship; 2) negligent representation by the attorney; and 3) loss caused by that negligence.
 
 [2]
 
 Louisiana law sets forth two peremptive limits within which to bring a legal malpractice action, namely one year from the date of the alleged act or one year from the date of discovery with a three-year limitation from the date of the alleged act, omission, or neglect to bring such claims.
 
 [3]
 

 Therefore, a legal malpractice is not prescribed if it was brought within one year of the date of discovery and the record shows that the claimant was | ^reasonably unaware of malpractice prior to the date of discovery and the delay in filing suit was not due to willful, negligent, or unreasonable action of the client.
 
 [4]
 

 As the Louisiana Supreme Court explained:
 

 The discovery rule, which our jurisprudence delineates as the fourth category of
 
 contra non valentem,
 
 is an equitable pronouncement that statutes of limitation do not begin to run against a person whose cause of action is not reasonably known or discoverable by him, even though his ignorance is not induced by the defendant....
 
 [5]
 

 Mr. Belton acknowledges that he knew when his file was returned to him in 2003, after three requests and a threat to file a complaint with the disciplinary commission, that no suit had been filed on his behalf and that the letter from Dr. Bucci stated that no medical malpractice occurred. However, he asserts that, on December 18, 2004, Cynthia Leuba called to tell him that she had actually typed the letter for Dr. Bucci and that the letter was backdated at the request of Ms. Baehr to avoid a legal malpractice suit.
 

 The record contains Ms. Leuba’s affidavit in which she states that she was formerly married to Dr. Richard Bucci. She stated that Ms. Baehr made “numerous calls” in the fall of 2003 requesting that Dr. Bucci review a case involving Jeffery Belton, who had been bitten by a brown recluse spider. Ms. Leuba further attested that
 

 on at least one of these telephone calls, Ms. Baehr discussed with me her need to get a letter from my husband regarding her client, Jeffrey Belton, because Belton was threatening to file a complaint against her with the Bar Association for allowing his case to prescribe. She urged me to remind Richard to write the letter.
 

 The affidavit also states that she typed the letter on November 28, 2003 but backdated it to December 3, 2002 on the specific instructions of Dr. Bucci. On the first week in December 2003, she and her husband traveled from their home in 17Pascagoula, Mississippi to the Beau Ri~ vage Casino in Biloxi, Mississippi where they met with “Ms. Baehr and her fiancee, Troy.” During that visit, Ms. Baehr and Dr. Bucci talked privately, and the letter was delivered at that time.
 

 Under our law, the “date of discovery” from which prescription or peremption begins to run is defined as the date on which a reasonable man in the position of the plaintiff has, or should have, either actual or constructive knowledge of the
 
 *908
 
 damage, the delict, and the relationship between them sufficient to indicate to a reasonable person he is the victim of a tort and to state a cause of action against the defendant.
 
 [6]
 

 A claimant’s mere apprehension that something may be -wrong is insufficient to commence the running of peremption unless the claimant knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of malpractice.
 
 [7]
 
 Thus, our inquiry is the reasonableness of Mr. Belton’s inaction in not filing the legal malpractice suit until 2005, in light of his education and intelligence, and the nature of the defendant’s conduct.
 

 Mr. Belton argues that he “discovered” the malpractice on December 18, 2004 when he learned that the opinion letter written by Dr. Bucci was backdated. Before this, he knew that the medical malpractice action had prescribed but, because he trusted his attorneys and Dr. Bucci, he believed they had a medical opinion a year before that opined he had no case in medical malpractice. It was not until he discovered that Dr. Bucci and Ms. Baehr had conspired against him that he realized he had an action in legal malpractice.
 

 Neither Ms. Baehr nor Mr. Broussard dispute the fact that the letter was backdated. Their argument is that the backdating of the letter is irrelevant because Ms. Baehr had actually gotten an oral opinion from Dr. Baehr the year before the | ¿letter was -written. They further argue that the opinion was confirmed by one of Mr. Belton’s own experts at the time of the hearing on the motions. We are not impressed by this argument. The merits of the medical malpractice action are not before this Court. Further, failure to file the medical malpractice action is not the only basis for Mr. Belton’s action in legal malpractice. Mr. Belton also points out that Ms. Baehr and Mr. Broussard may have breached a fiduciary duty they owed to him by misrepresenting Dr. Bucci’s letter and by failing to keep him reasonably informed.
 
 [8]
 

 In no other agency relationship is a greater duty of trust imposed than in that involving an attorney’s duty to his client.
 
 [9]
 
 As our supreme court explained:
 

 In no other agency relationship is a greater duty of trust imposed than in that involving an attorney’s duty to his client.... “Louisiana law recognizes that an attorney’s paramount duty is, and must be, to his client.” This fiduciary duty obligates the attorney to exercise at least that degree of care, skill, and diligence exercised by prudent attorneys practicing in his community of locality.... Though he is not required to exercise perfect judgment in every instance, his license to practice and his contract for employment hold out to his client that he possesses certain minimal skills, knowledge, and abilities.... It so follows that “any professional misconduct, unreasonable lack of skill or fidelity in professional or fiduciary duties” constitutes malpractice....
 

 The law leaves no uncertainty in defining the character of duty which an attorney owes to his client. The relation of attorney and client is more than a contract. It superinduces a trust status of the highest order and devolves upon the attorney the imperative duty of deal
 
 *909
 
 ing with the client only on the basis of the strictest fidelity and honor.
 
 [10]
 

 In the matter before us, Mr. Belton knew that his lawsuit for medical malpractice was not timely filed. However, the admitted deception and misrepresentation of Ms. Baehr, Mr. Broussard, and Dr. Bucci to Mr. Belton was a violation of the trust Mr. Belton placed in his attorneys. We find that the date of discovery for purposes of prescription was December 18, 2004, when Mr. Belton ^became aware of this deception. Accordingly, we find the legal malpractice action was not prescribed, and the trial court erred in so ruling.
 

 We also find that the action against Dr. Richard Bucci is not prescribed. The action against Dr. Bucci sounds in tort and is subject to a one-year prescriptive period, which runs from the day injury or damage is sustained.
 
 [11]
 
 Mr. Belton alleges fraud and misrepresentation claims against Dr. Bucci relative to his backdating of the opinion letter on the subject of medical malpractice. Because prescriptive statutes are strictly construed, our courts have recognized a jurisprudential exception to prescription. The doctrine of
 
 contra non valentem,
 
 which means that prescription does not run against a person who could not bring his suit, serves to soften the harshness of the strict prescriptive periods.
 
 [12]
 
 There are four instances in which the doctrine of
 
 contra non valentem
 
 applies. Two of these instances are where the debtor himself had done some act effectually to prevent the creditor from availing himself of his cause of action and the discovery rule previously cited in this opinion. We believe the doctrine of
 
 contra non valentem
 
 applies in this instance. Given the circumstances of the case, we find that the action against Dr. Bucci is not prescribed.
 

 For the foregoing reasons, we find the trial court erred in finding Mr. Belton’s actions against Ms. Baehr, Mr. Broussard, the Broussard Firm, and Dr. Bucci have prescribed. Accordingly, we reverse that judgment and remand the matter for further proceedings.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . The pleading is entitled, “Motion for Summary Judgment.” However, it appears from the memorandum in support of the motion and the reasons argued in favor of summary judgment that Mr. Broussard et al. also intended to file an exception of prescription.
 

 [2]
 

 .
 
 Costello v. Hardy,
 
 03-1146 (La.1/21/04), 864 So.2d 129, 138.
 

 [3]
 

 . La. R.S. 9:5605(A).
 

 [4]
 

 .
 
 Teague v. St. Paul Fire and Marine Ins. Co.,
 
 07-1384 (La.2/1/08), 974 So.2d 1266, 1274.
 

 [5]
 

 .
 
 Id.
 
 at 1274 (citations omitted) (emphasis as found in original).
 

 [6]
 

 .
 
 Teague,
 
 974 So.2d at 1275.
 

 [7]
 

 .
 
 Campo v. Correa,
 
 01-2707 (La.6/21/02), 828 So.2d 502, 511.
 

 [8]
 

 . Rule 1.4 of the RPC.
 

 [9]
 

 .
 
 Scheffler v. Adams and Reese, LLP,
 
 06-1774 (La.2/22/07), 950 So.2d 641, 652.
 

 [10]
 

 .
 
 Teague,
 
 974 So.2d at 1271 (citations omitted).
 

 [11]
 

 . La. C.C. art. 3492.
 

 [12]
 

 . Harvey v. Dixie Graphics, Inc.,
 
 593 So.2d 351, 354 (La.1992).