STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

JAMES PATRICK PATIN

VERSUS

LEO WILLIAM FERGUSON

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2010-5961-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett, and John E. Conery, Judges.

**AFFIRMED.**

**David Payne Spence**
**P. O. Drawer 12365**
**Alexandria, LA 71315-2365**
**Telephone: (318) 487-4300**
**COUNSEL FOR:**
 **Defendant/Appellant - Leo William Ferguson**

**Edwin Gustav Preis, Jr.**
**Preis & Roy**
**P. O. Drawer 94-C**
**Lafayette, LA 70509**
**Telephone: (337) 237-6062**
**COUNSEL FOR:**
 **Plaintiff/Appellee - James Patrick Patin**

**THIBODEAUX, Chief Judge.**

In this business dispute, the plaintiff, James Patin, alleges that his co-member in their joint limited liability company ("LLC"), American Recycling, LLC ("American Recycling," "the LLC," or "the company"), defendant William Ferguson, breached his fiduciary duties to the LLC by unilaterally selling the company's primary piece of equipment, an Al-jon Model 580 CL Logger Baler ("the Baler") and dissolving the company. The trial court agreed with Mr. Patin and awarded damages. Mr. Ferguson appeals the trial court's judgment. We affirm.

I.

## ISSUES

We must decide whether the trial court erred in finding:

(1)    that the Baler purchased by Mr. Ferguson was a capital contribution to the LLC;

(2)    that Mr. Ferguson breached his fiduciary duties to the LLC and to Mr. Patin by selling the Baler and by dissolving the LLC; and

(3)    that Mr. Patin was entitled to damages in the amount of $161,666.00.

II.

## FACTS AND PROCEDURAL HISTORY

In January 2006, the parties formed American Recycling, a company that acquired scrap metal, baled and compacted the scrap, then re-sold the baled scrap at a profit. Under the Articles of Organization ("the Articles"), the company

was member-managed, and Mr. Ferguson and Mr. Patin comprised the membership. Once each member had been proportionally reimbursed for his capital contribution, profits and losses would be split between the two members on an equal basis. Article IX of the Articles specifically provided as follows:

> All profits and/or losses of the company shall be shared and disbursed to the members in direct proportion to the percentage of monies paid in capital and/or loans by each respective member until and only all [sic] actual dollar amounts so loaned or contributed are repaid, without interest or tax considerations. Immediately after payout, all profits and/or losses shall be paid and/or allocated, such that members, James Patrick Patin, shall be granted Fifty percent (50%) and Leo William Ferguson, shall be granted Fifty percent (50%).

The parties orally agreed that Mr. Ferguson's contribution to the company would consist of the purchase of the Baler[1] and other start-up costs, and Mr. Patin's contribution would consist of his personal service and extensive expertise in the scrap metal industry. Both parties testified that they considered these agreements regarding the business operations and start-up capital to be binding agreements.

Mr. Ferguson purchased the Baler for $412,757.00, and he advanced $20,500.00 in cash to start the company. Though the Baler was purchased in Mr. Ferguson's name, it was dedicated to the company's operations. The company operated from March 2006 through June 2008. During the operation of the company, Mr. Ferguson was paid $159,500.00 toward the purchase price of the Baler. While the company operated, Mr. Patin was paid $2,083.00 per month as a salary. Mr. Ferguson did not receive a salary, but Mr. Patin testified that the

---

[1]The Baler was crucial to the operation of the business. It was used to compact or "bale" metal into more easily handled scrap.

parties agreed that once the Baler was paid for, the salary funds would be "caught up."

The business records of the company and the testimony of the parties indicate that the company was profitable during its two-year run. Despite that profitability, at some point in 2008, Mr. Ferguson decided that he no longer wanted to operate a business with Mr. Patin. Mr. Ferguson testified that he lost trust in Mr. Patin due to Mr. Patin's failure to repay a personal loan Mr. Ferguson advanced to him. Mr. Ferguson abruptly demanded possession of the Baler and requested an audit of the business records. Mr. Patin immediately complied with Mr. Ferguson's demands.

Mr. Ferguson first offered to sell the Baler to Mr. Patin. Mr. Patin could not afford to purchase it. He asked Mr. Ferguson to provide owner financing, but Mr. Ferguson refused. Thereafter, Mr. Ferguson sold the Baler to a third party for $360,000.00. Without the Baler, American Recycling closed.

Mr. Ferguson not only sold the most important asset of the company, but he also closed the company's bank account, which had $38,883.53 on deposit. He also retained the proceeds of a workers' compensation premium refund in the amount of $3,076.00.

At trial, Mr. Ferguson attempted to explain his actions by offering the testimony of his wife, Yolanda Ferguson. Mrs. Ferguson testified that she did not want her husband to go into business with Mr. Patin. Despite her wariness, she maintained the checkbook for American Recycling. Her testimony indicates that she was very upset with Mr. Patin for not repaying the personal loan Mr. Ferguson provided.

3

In addition to Mrs. Ferguson's testimony, Mr. Ferguson offered the testimony of a financial expert, Richard Urban. Mr. Urban's opinions, issued through two depositions, state that the Baler was not an asset of the company but rather was rented to the company at a rate of $6,312.00 per month based on a cost of $380,882.00 at six percent with no residual value. No evidence in the record supports Mr. Urban's opinions.

Mr. Patin submitted the testimony of his own financial expert, Michael Carbo. Mr. Carbo testified as to the fair market value of American Recycling as of the dissolution date of June 19, 2008. The net asset value of the company, according to Mr. Carbo, was $78,352.00. Mr. Carbo's calculation assumed that the Baler was a capital contribution to the company. Thus, according to Mr. Carbo, Mr. Patin was entitled to one-half of $78,352.00, or the sum of $39,176.00.

Mr. Carbo also testified regarding Mr. Patin's past lost wages and future lost earnings. Regarding past lost wages, Mr. Carbo based his calculations on the fact that Mr. Patin received a salary of $2,083.00 per month for his work with American Recycling. Mr. Carbo testified that from the date of dissolution of the company to the date of trial, Mr. Patin would have earned $111,370.00.[2] Mr. Carbo also opined as to Mr. Patin's future earnings. He theorized that, without Mr. Ferguson's actions, American Recycling would likely have operated profitably for another ten years, earning Mr. Patin $116,852.00.

The trial court considered all of the evidence presented and found that: (1) the Baler was a capital contribution to the company; (2) Mr. Ferguson

---

[2] Mr. Carbo's calculation includes forty-one pay periods between July 2008 and November 2011 totaling $90,196.00. At trial, Mr. Carbo testified that the $111,370.00 amount was the present day value of those earnings.

breached his fiduciary duties to the company and to Mr. Patin; and (3) Mr. Patin was entitled to judgment in his favor and against Mr. Ferguson. The trial court awarded damages to Mr. Patin in the following sums: (a) $39,176.00, representing one-half of the fair market value of American Recycling as of the dissolution date; (b) $62,490.00, representing past lost wages; (c) $50,000.00, representing future lost earnings; and (d) $10,000.00 representing general damages.

The trial court discounted Mr. Carbo's calculations regarding past lost wages because they did not take into account that Mr. Patin was able to sell some scrap metal in an individual capacity between June 2008 and June 2010 to earn some money. Moreover, the trial court reasoned that Mr. Carbo's calculations also did not consider that Mr. Patin had received supplemental security income since January 2011 in the amount of $698.00 per month. The trial court also discounted Mr. Carbo's testimony regarding Mr. Patin's future lost earnings. Specifically, the trial court stated that Mr. Carbo's estimate that the business would operate for ten years, yielding Mr. Patin $116,852.00, did not consider Mr. Patin's poor health and deteriorating physical condition.

## III.

## LAW AND DISCUSSION

### Standard of Review

A trial court's finding of fact may not be reversed absent manifest error or unless it is clearly wrong. *Stobart v. State, through Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993). The reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's findings; it must instead "review the record in its entirety to determine whether the

trial court's finding was clearly wrong or manifestly erroneous." *Id.* at 882. The issue to be resolved on review is whether the fact finder's conclusion was a reasonable one, not whether it was right or wrong. *Id.* The reviewing court must always keep in mind that "if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 882-83 (quoting *Housley v. Cerise*, 579 So.2d 973, 976 (La.1991)).

With respect to the quantum of damages and the review of an award of general damages, the supreme court has held that the assessment of "quantum," or the appropriate amount of damages, is a determination of fact entitled to great deference on review. As such, "the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact." *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1260 (La.1993), *cert denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994).

## Status of the Baler

Neither party disputes that the Baler was the "heart and soul" of the business. A dispute exists, however, regarding its ownership. Mr. Patin argues, and the trial court agreed, that the Baler was a capital contribution to the company. Mr. Ferguson counters that he personally purchased the Baler and only agreed to lease it to the LLC.

A capital contribution is "anything of value that a person contributes to the limited liability company as a prerequisite for, or in connection with

6

membership, including cash, property, services rendered, or a promissory note or other binding obligation to contribute cash or property or to perform services." La.R.S. 12:1301(A)(3). A capital contribution does not have to take the form of cash; indeed, the contribution of a member can take the form of cash, property, or services performed to the LLC. La.R.S. 12:1321.

Here, the record is replete with evidence that the parties orally agreed that Mr. Ferguson would contribute cash and the Baler as capital to the company, and Mr. Patin would contribute his knowledge of the scrap business, his expertise in operating the Baler, and his time and services rendered in the daily operation of the company. Moreover, Mr. Ferguson testified that the sole purpose of purchasing the Baler was to begin the operation of the company.

Mr. Ferguson attempts to refute this abundant evidence by first arguing that if his intent was to contribute the Baler to the company, he would have formalized the agreement. Mr. Ferguson's argument is weakened by key facts produced at trial. Namely, Mr. Ferguson and Mr. Patin did reach an agreement. The parties orally agreed that in exchange for his contribution of the Baler to the company, Mr. Ferguson would receive not only repayment for the Baler, but also a perpetual fifty percent share in the company's profits. As a result of that agreement, Mr. Ferguson received nearly half the purchase price of the Baler—an obvious return on his capital contribution to the company.

The evidence in the record also does not support Mr. Ferguson's assertion that he merely rented the Baler to the company. The existence of a rental agreement was unsubstantiated by any credible evidence. Thus, we find no error in the trial court's judgment that the Baler was a capital contribution to the LLC.

7

**Breach of Fiduciary Duties**

Though Mr. Ferguson does not assign it as error in his appellate brief, implicit in his argument on appeal is that the trial court erred in finding that he breached his fiduciary duties to the LLC and to Mr. Patin. We find no error in the trial court's judgment that Mr. Ferguson breached his fiduciary duties.

Louisiana Revised Statutes 12:1314(A)(1) provides that any member or manager entrusted with managing the business shall "stand in a fiduciary relationship to the limited liability company and its members" and shall act "in good faith, with the diligence, care, judgment, and skill which an ordinary prudent person in a like position would exercise under similar circumstances." In *Bryan D. Scofield, Inc. v. Susan A. Daigle, Ltd.*, 08-798, p. 4 (La.App. 3 Cir. 12/10/08), 999 So.2d 311, 314, a panel of this court recognized that the LLC law "provides that members with management responsibilities have fiduciary obligations, including a duty of care and duty of loyalty, not only to the limited liability company but to the other members as individuals also." The court further stated that, "a fiduciary may not take even the slightest advantage, but must zealously, diligently, and honestly guard and champion the rights of his principal . . . and is bound not to . . . conflict with the interest of the principal to even the slightest extent." *Id.* at 316. Moreover, the supreme court has recognized that the duty of loyalty includes the obligation of "utmost good faith, fairness, and honesty in their dealings with each other with respect to the matters pertaining to the enterprise." *Scheffler v. Adams and Reese, LLP*, 06-1774, fn. 2 (La. 2/22/07), 950 So.2d 641, 648.

In *Scofield*, 999 So.2d at 315, the court stated that "a member has a direct right of action against other members individually for a breach of fiduciary

duty when such breach is grossly negligent and the damage is to the suing member directly." The court explained:

> The Limited Liability Company Law further provides that a member "shall not be held personally liable to the limited liability company or the members" unless the member "acted in a grossly negligent manner ... or engaged in conduct which demonstrates a greater disregard of the duty of care than gross negligence, including but not limited to intentional tortuous conduct or intentional breach of his duty of loyalty." La.R.S. 12:1314(B). Gross negligence is defined "as a reckless disregard or a carelessness amounting to indifference to the best interests of the limited liability company or the members thereof." La.R.S. 12:1314(C).

*Id.*

With this standard at the backdrop, it is clear not only that Mr. Patin has a direct right of action against Mr. Ferguson but also that Mr. Ferguson breached his fiduciary duties to the LLC and to Mr. Patin. In reckless disregard of his duties of good faith and loyalty, and without notice to Mr. Patin, Mr. Ferguson sold the Baler to a third party; retained the entire purchase price of the Baler; emptied American Recycling's checking account; removed Mr. Patin as an authorized user of the account; and took possession of over $3,000.00 paid to the LLC by its workers' compensation insurer. Mr. Ferguson's actions were blatant, malicious, and grossly negligent. It is undisputed that Mr. Ferguson's actions effectively dissolved the LLC and ended Mr. Patin's livelihood.

Moreover, Mr. Ferguson's actions conflicted with Louisiana LLC law. Louisiana Revised Statutes 12:1318(B) requires a majority vote of the members to approve the sale, exchange, lease, mortgage, pledge, or other transfer of all or substantially all of the assets of the LLC and to approve the dissolution and winding up of the LLC, unless otherwise provided in the Articles of Organization

9

or a written operating agreement. Neither agreement was present here. Instead, Mr. Ferguson unilaterally sold the most valuable asset of the business—the Baler—and transferred all assets from American Recycling's account to his own. He deliberately took these actions without any notice or discussions with Mr. Patin, in direct violation of La.R.S. 12:1318(B).

Mr. Ferguson acted selfishly and without any regard for Mr. Patin or American Recycling. He behaved in a grossly negligent manner, and he breached his fiduciary duties. Indeed, his breaches of his fiduciary duties rendered American Recycling inoperable and deprived Mr. Patin of his sole source of income. Thus, we agree with the trial court that Mr. Ferguson violated his fiduciary duties and acted with gross negligence. As such, Mr. Patin is entitled to damages.

**Damages**

In assessing damages, the trial court considered the expert testimony of Mr. Carbo and Mr. Urban. The trial court noted that the testimony of the two experts differed greatly, with the major point of differentiation based upon Mr. Urban's conclusion that the Baler was not an asset of the business. The trial court made a factual finding that the Baler was a capital contribution to the company. Thus, it discounted Mr. Urban's testimony and agreed with Mr. Carbo's assessment of damages. Moreover, it is clear from the trial court's written reasons for judgment that it found Mr. Carbo to be a much more credible witness. Indeed, the trial court noted that Mr. Urban's depositions brought "confusing results to the court," and his opinions appeared to be "arbitrary, self-serving, and without support of the evidence submitted in the case at bar."

We find no error in the trial court's award for damages, including those awarded to Mr. Patin for fifty percent of the net asset value of American Recycling; past lost wages; and general damages. We also find no error in the trial court's award of $50,000.00 for future lost earnings. Though the trial court inelegantly used the word "arbitrary" in describing the $50,000.00 award, we find that strong support existed in the record for award of $50,000.00 or more for future lost earnings. It is clear from the trial court's thorough written reasons for judgment that he considered all of Mr. Carbo's testimony. The trial court merely disagreed with Mr. Carbo regarding the viability of Mr. Patin's long-term employment prospects.

IV.

## CONCLUSION

For the reasons articulated above, we affirm the judgment of the trial court. Costs of this appeal are assessed against Leo William Ferguson.

**AFFIRMED.**