950 So.2d 641 (2007)
William J. SCHEFFLER, III
v.
ADAMS AND REESE, LLP, et al.
No. 2006-CC-1774.
Supreme Court of Louisiana.
February 22, 2007.
*644 Montgomery, Barnett, Brown, Read, Hammond & Mintz, Daniel Lund, New Orleans, Jason A. Cavignac, for Applicant.
David Colvin & Associates, David Lawrence Colvin, Connie Phuong Trieu, Gretna, Lewis Scott Joanen, for Respondent.
WEIMER, Justice.
We granted certiorari in this case to determine whether two attorneys, separately engaged by a client to work as co-counsel on litigation, owe fiduciary duties to each other. Concomitantly, we must also determine whether a cause of action exists in favor of one attorney against the other attorney for breach of fiduciary duty on the theory that the latter attorney's misconduct caused the former to be terminated from the representation, resulting in damages in the form of prospective lost revenue expected to be realized from that representation. Finding that the petition in this case does not contain sufficient well-pleaded facts to establish the existence of a fiduciary relationship between co-counsel, we reverse the decision of the district court. In so doing, we hold that even if the existence of a fiduciary relationship could be established, no cause of action will lie between co-counsel based on the theory that such a fiduciary relationship obligates co-counsel to protect one another's prospective interest in a fee. In *645 order to preserve the attorney's paramount duty of undivided loyalty to his or her client, considerations emanating from this court's constitutional obligation to regulate the practice of law demand that no collateral duties arise to interfere with that duty, such as the duty to conduct the representation in a manner that does not diminish or defeat co-counsel's interest in a prospective fee.

FACTS AND PROCEDURAL HISTORY
This case arises from a petition for damages filed on December 29, 2005, on behalf of William J. Scheffler, III (Scheffler), naming as defendants James G. Perdigao (Perdigao) and the law firm of Adams and Reese, LLP (Adams and Reese). The petition alleges that Scheffler is a Louisiana licensed attorney, maintaining a private law practice in this state. In October 2002, he was retained by Boomtown Casino Westbank (Boomtown) to defend personal injury claims (primarily slip and fall cases) filed against the casino. Prior to his formal retention, Boomtown informed Scheffler that his engagement was subject to the approval of the casino's corporate counsel, Perdigao, a partner in the law firm of Adams and Reese. Scheffler met with Perdigao and representatives of Boomtown, and was eventually approved as defense counsel, with his formal representation commencing on November 1, 2002. As remuneration for his services, Scheffler received a fixed monthly retainer, plus reimbursement of all expended litigation costs. He was instructed by Boomtown that he was to work with and report to Perdigao.
This arrangement continued without interruption until September 7, 2004, when Scheffler was informed by Boomtown that Perdigao had "ethical problems" and that, as a result, another Adams and Reese attorney would be taking his place. According to the petition, on October 13, 2004, the Times Picayune newspaper published an article reporting on the details of Perdigao's alleged "ethical problems." According to the article, Perdigao was billing and collecting fees outside of Adams and Reese's accounting system and disbursing the monies collected to companies he controlled. Although Scheffler had developed a close working relationship with Perdigao in the handling of claims against the casino, he had no knowledge of or involvement in Perdigao's wrongdoing. Nevertheless, on October 25, 2004, Scheffler received a letter from Boomtown terminating his representation of the casino "in light of recent events."[1]
Scheffler's petition alleges that the foregoing facts give rise to claims against Perdigao for negligent interference with a contractual relationship, intentional interference with a contractual relationship, negligence, unfair trade practices, fraud, and breach of fiduciary duty. His petition additionally alleges that Adams and Reese is responsible for Perdigao's actions under principles of respondeat superior and that the firm is independently liable for its negligence in failing to adequately supervise Perdigao's activities. The petition seeks general damages in the form of past, present, and future economic loss, mental anguish, and loss of earning capacity.
Adams and Reese responded to the plaintiff's petition by filing a peremptory exception of no cause of action, asserting that the allegations in Scheffler's petition fail to set forth any facts or theory of *646 liability upon which relief might be granted. Following a hearing, the district court sustained Adams and Reese's exception as to all claims except the claim alleging breach of fiduciary duty, finding that "the facts as set forth in the petition establish a fiduciary duty in favor of the plaintiff against Adams & Reese such that it's [sic] survives this exception."
Adams and Reese applied to the Fourth Circuit Court of Appeal for supervisory writs from the district court's ruling. A divided panel of the court of appeal denied that writ application, stating: "We find no error in the judgment by the district court that denied the Relator's peremptory exception of no cause of action." Scheffler v. Adams and Reese, LLP, 06-0700 (La.App. 4 Cir. 6/23/06). Judge Murray dissented from the writ denial, pointing out that the petition in this case does not allege or describe a fiduciary duty owed to plaintiff personally by either defendant. Further explaining her position, Judge Murray noted:
I am not aware of any Louisiana law, statutory or jurisprudential, that would support the existence of a fiduciary duty between co-counsel under any facts, much less under the facts alleged. Moreover, plaintiff has not alleged or established that he and Perdigao actually served together as co-counsel for Boomtown on any specific case or matter, only that Boomtown sought the approval of Perdigao before hiring the plaintiff and instructed the plaintiff generally to "work with and answer to" Perdigao. Assuming the law would recognize a fiduciary duty between co-counsel, such duty would have to be premised upon the existence of a co-counsel relationship.
Upon Adams and Reese's application, we granted certiorari to review the correctness of the district court's determination that the plaintiff's petition states a cause of action for breach of fiduciary duty. Scheffler v. Adams and Reese, LLP, 06-1774 (La.11/9/06), 941 So.2d 28.

LAW AND ANALYSIS
The narrow issue presented in this case is whether Scheffler's petition states a cause of action for breach of fiduciary duty.
As used in the context of the peremptory exception, a "cause of action" refers to the operative facts which give rise to the plaintiff's right to judicially assert the action against the defendant. Ramey v. DeCaire, 03-1299, p. 7 (La.3/19/04), 869 So.2d 114, 118; Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1238 (La.1993). The purpose of the peremptory exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. Ramey, at 7, 869 So.2d at 118; Everything on Wheels Subaru, Inc., 616 So.2d at 1235. No evidence may be introduced to support or controvert the exception of no cause of action. LSA-C.C.P. art. 931. The exception is triable on the face of the pleadings, and, for purposes of resolving the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. Fink v. Bryant, 01-0987, p. 4 (La.11/28/01), 801 So.2d 346, 349; City of New Orleans v. Board of Commissioners of Orleans Levee District, 93-0690, p. 28 (La.7/5/94), 640 So.2d 237, 253. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Ramey, at 7, 869 So.2d at 118.
Louisiana retains a system of fact pleading, and mere conclusions of the plaintiff unsupported by facts will not set *647 forth a cause or right of action. Montalvo v. Sondes, 93-2813, p. 6 (La.5/23/94), 637 So.2d 127, 131. The burden of demonstrating that a petition fails to state a cause of action is upon the mover. Ramey, at 7, 869 So.2d at 119; City of New Orleans, at 28, 640 So.2d at 253. Because the exception of no cause of action raises a question of law and the district court's decision is based solely on the sufficiency of the petition, review of the district court's ruling on an exception of no cause of action is de novo. Fink, at 4, 801 So.2d at 349; City of New Orleans, at 28, 640 So.2d at 253. The pertinent inquiry is whether, in the light most favorable to the plaintiff, and with every doubt resolved in the plaintiff's favor, the petition states any valid cause of action for relief. Ramey, at 8, 869 So.2d at 119.
Accepting all of the allegations in Scheffler's petition as true, and applying the legal principles set forth above, we find, contrary to the conclusions of the district and appellate courts, that the petition in this case fails to allege facts sufficient to state a cause of action for breach of fiduciary duty.
Generally, whether a fiduciary duty exists, and the extent of that duty, depends upon the facts and circumstances of the case and the relationship of the parties. As a basic proposition, for a fiduciary duty to exist, there must be a fiduciary relationship between the parties. A review of the factual allegations in Scheffler's petition in the instant case reveals that it fails to allege any facts which could give rise to a determination that a fiduciary relationship existed between Perdigao and Scheffler arising from their joint representation of Boomtown such that Perdigao owed Scheffler a fiduciary duty to conduct his representation of Boomtown in a manner that would not diminish or defeat Scheffler's interest in prospective fees arising out of that representation.
A fiduciary relationship has been described as "one that exists `when confidence is reposed on one side and there is resulting superiority and influence on the other.'" Plaquemines Parish Commission Council v. Delta Development Company, Inc., 502 So.2d 1034, 1040 (La.1987), quoting Toombs v. Daniels, 361 N.W.2d 801, 809 (Minn.1985).
The word "fiduciary," as a noun, means one who holds a thing in trust for another, a trustee; a person holding the character of a trustee, or a character analogous to that of a trustee, with respect to the trust and confidence involved in it and the scrupulous good faith and candor which it requires; a person having the duty, created by his undertaking, to act primarily for another's benefit in matters connected with such undertaking.
State v. Hagerty, 251 La. 477, 492, 205 So.2d 369, 374 (1967), quoting 36A C.J.S. Fiduciary, p. 381. One is said to act in a fiduciary capacity "when the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other." Hagerty, 251 La. at 493, 205 So.2d at 374-375, quoting BLACK'S LAW DICTIONARY (4th ed.1951).
The term "fiduciary" is defined in the Uniform Fiduciaries Law, LSA-R.S. 9:3801(2), as follows:
"Fiduciary" includes a trustee under any trust, expressed, implied, resulting or constructive, executor, administrator, guardian, conservator, curator, receiver, trustee in bankruptcy, assignee for the benefit of creditors, partner, agent, officer *648 of a corporation, public or private, public officer, or any other persons acting in a fiduciary capacity for any person, trust or estate.
The Uniform Fiduciaries Law appears in the Civil Law Ancillaries under Code Title XV  Of Mandate. By definition, a mandate is "a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." LSA-C.C. art. 2989. The defining characteristic of a fiduciary relationship, therefore, is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor. Plaquemines Parish Commission Council, 502 So.2d at 1040; Hagerty, 251 La. at 493, 205 So.2d at 374-375.
A review of Scheffler's petition reveals that there are no facts pleaded that would establish a legal relationship between the parties that would give rise to fiduciary obligations. In other words, the petition fails to allege facts sufficient to establish the existence of a fiduciary relationship between Scheffler and Perdigao or Adams and Reese. The petition clearly avers that Scheffler and Perdigao were retained individually and independently by Boomtown to represent Boomtown. There is no allegation of a contract between Scheffler and Perdigao or Adams and Reese. Likewise, the petition is devoid of any allegations regarding the existence of a mandate, or agency relationship, between the attorneys, i.e., there is no allegation that Perdigao or Adams and Reese was transacting any of Scheffler's affairs for the benefit of Scheffler; only that the parties were separately retained by Boomtown to represent Boomtown. Neither is there any allegation of a co-ownership interest in the endeavor, such as would derive from a partnership or joint venture agreement between the attorneys.[2]
The petition alleges only that Scheffler was instructed by his client "to work with and answer to Perdigao." Even when construed most favorably to Scheffler, the petition, at best, describes a relationship in *649 which the attorneys acted as co-agents of Boomtown. There is simply no allegation of any legal relationship between the attorneys that would give rise to fiduciary duties owed personally to Scheffler. This fact is amply demonstrated in paragraph XIX of the petition, the paragraph that sets out the allegations concerning breach of fiduciary duty. Therein, Scheffler alleges:
Peridgao knew of the contractual relationship between Boomtown and Scheffler, and had a fiduciary duty as an attorney to maintain and safeguard funds belonging to a client or third party and failed to do so. Additionally, Peridgao failed to properly deliver funds to a client or third party, which conduct defeated the administration of justice and which brought the legal profession into disrepute.
Reduced to its basics, this paragraph alleges that Perdigao had a fiduciary duty "as an attorney," (and thus, to his client, Boomtown) to safeguard funds belonging to his client or a third party, and that his failure to deliver the funds "defeated the administration of justice and . . . brought the legal profession into disrepute," an allegation that, at best, sets forth a duty owed to the client, Boomtown, and the legal profession at large, but not to Scheffler personally.[3]
Since the facts alleged in the petition are not sufficient to establish the existence of a fiduciary relationship between the parties, and hence the existence of fiduciary duties arising out of that relationship, the district court erred in failing to sustain the exception of no cause of action as to the claim for breach of fiduciary duty.
Louisiana Code of Civil Procedure article 934 provides that "[w]hen the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court." In brief to this court, Scheffler suggests that through discovery he will be able to uncover additional facts, not previously pleaded, establishing the existence of a fiduciary relationship between Perdigao or Adams and Reese and himself, thereby overcoming the present objections to the legal sufficiency of the petition. Ordinarily, allowing amendment of plaintiff's petition for such a purpose would be the appropriate course. However, Scheffler was a participant in this relationship and, as such, was fully cognizant of the scope of the relationship and all relevant facts. Further, because we find that public policy dictates against recognizing a fiduciary duty among co-counsel to protect one another's interest in a prospective fee, allowing amendment for this purpose alone would not remove the legal impediments to plaintiff's pursuit of an action based on allegations of breach of fiduciary duty.
The narrow issue raised in this regard is whether one co-counsel may sue another for breach of fiduciary duty on the theory that the latter's misconduct in handling the representation reduced or eliminated the prospective fees the former expected to realize from the joint representation. The issue is res nova in this court, but it has been addressed by courts in other jurisdictions.
In Beck v. Wecht, 28 Cal.4th 289, 121 Cal.Rptr.2d 384, 48 P.3d 417 (2002), the California Supreme Court granted review to consider a question similar to the one presented here: whether one co-counsel may sue another for breach of fiduciary duty on the theory that the latter's malpractice *650 in handling their mutual client's case reduced or eliminated the fees the former expected to realize from the case. In Beck, the plaintiff attorney had been retained by two individuals to represent them in a personal injury action against General Motors. With the consent of his clients, Beck associated attorney McBee to assist in prosecuting the case. Again with the clients' consent, McBee associated attorney Wecht to serve as local counsel. The attorneys entered into separate written agreements respecting the division of fees and costs associated with the representation.[4] Pretrial settlement efforts proved unsuccessful. During the course of trial, however, the defendant offered to settle the case for six million dollars. The clients instructed their attorneys to settle the case. Despite the clients' instructions, McBee failed to contact the defendant to settle the case, and the jury returned a defense verdict.
Beck filed suit against co-counsel seeking to recover the contingency fee he had expected to earn in the case. The California Supreme Court denied relief, finding that the claim was contrary to public policy. Beck, 28 Cal.4th at 297, 121 Cal.Rptr.2d 384, 48 P.3d at 422. Reasoning that imposing a fiduciary duty to protect prospective fees would create potential impermissible conflicts with the duty of loyalty attorneys owe their clients, the court held that to avoid any detriment to the jointly represented clients, no collateral duties could arise that might interfere with the duty of undivided loyalty and total devotion owed to the clients. Id. Although urged to do so, the court declined to adopt a case-by-case approach to resolving the issue of whether a fiduciary duty to co-counsel exists, and instead adopted a bright-line rule, holding that, as a matter of public policy, no fiduciary duties exist between co-counsel that would allow recovery for lost or reduced prospective fees. Beck, 28 Cal.4th at 297-298, 121 Cal. Rptr.2d 384, 48 P.3d at 422-423. The court reasoned that adoption of a bright-line rule is preferable because it prevents conflicts from arising at any point during representation of a client, thereby assuring that the client's interest remains paramount regardless of the issue. Id.
Beck was followed in a subsequent decision by the Washington Supreme Court. In Mazon v. Krafchick, 158 Wash.2d 440, 144 P.3d 1168 (2006), attorney Mazon was retained to represent an individual in connection with his claim for personal injury. With his client's consent, Mazon associated attorney Krafchick in what the parties agreed was a "joint venture agreement" to split fees and costs equally. Although Mazon drafted a complaint, Krafchick failed to timely serve it, and the statute of limitations expired. The client's complaint was dismissed. Mazon then filed suit against Krafchick asserting various legal theories, among them breach of the joint venture agreement, breach of fiduciary duty, professional negligence and indemnification. The petition sought recovery for Mazon's loss of his expected contingency fee, the amount his insurance company paid to settle the client's malpractice lawsuit, his out-of-pocket insurance deductible, and the costs he advanced in the client's lawsuit.
Following the lead of California's highest court, the Washington court held that public policy dictates against allowing claims between co-counsel for lost prospective fees because of the potential conflict that exists with respect to the undivided loyalty owed to the client. Mazon, 158 Wash. at 448, 144 P.3d at 1172. Consistent with the decision in Beck, the court adopted a bright-line rule holding that no *651 duties exist between co-counsel that would allow recovery for lost or reduced prospective fees. The court explained:
As cocounsel, both attorneys owe an undivided duty of loyalty to the client. The decisions about how to pursue a case must be based on the client's best interests, not the attorneys'. The undivided duty of loyalty means that each attorney owes a duty to pursue the case in the client's best interests, even if that means not completing the case and forgoing [sic] a potential contingency fee.
If we were to recognize an attorney's right to recover from cocounsel prospective fees, potential conflicts of interest that harm the client's interest may arise. Cocounsel may develop an impermissible self-interest in preserving the claim for the prospective fee, even when the client's interests demand otherwise. Additionally, the question of whether an attorney's claim conflicts with the client's best interests may be difficult to answer. Discretionary, tactical decisions, such as whether to advise clients to settle or risk proceeding to trial and determining the amount and structure of settlements, could be characterized by cocounsel as a breach of the contractual duties or general duties of care owed to one another and provide a basis for claims seeking recovery of prospective fees.
Mazon, 158 Wash. at 448-449, 144 P.3d at 1172-1173. The court expressed concern that, in the absence of a bright-line rule, "`[p]ublic confidence in the legal system may be eroded by the spectacle of lawyers squabbling over the could-have-beens of a concluded lawsuit, even when the client has indicated no dissatisfaction with the outcome.'" Id., quoting Beck, 28 Cal.4th at 296, 121 Cal.Rptr.2d 384, 48 P.3d 417.
Consistent with the underlying principles relied on by the courts in the foregoing cases, Louisiana law recognizes that an attorney's paramount duty is, and must be, to his client. Penalber v. Blount, 550 So.2d 577, 581 (La.1989). In fact, our law adheres to the principle that in no other agency relationship is a greater duty of trust imposed than in that involving an attorney's duty to his client. Plaquemines Parish Commission Council, 502 So.2d at 1040. As noted by the court of appeal in Searcy v. Novo, 188 So. 490 (La.App. 2d Cir.1939):
The law leaves no uncertainty in defining the character of duty which an attorney owes to his client. The relation of attorney and client is more than a contract. It superinduces a trust status of the highest order and devolves upon the attorney the imperative duty of dealing with the client only on the basis of the strictest fidelity and honor.
Searcy, 188 So. at 498. As we have frankly acknowledged: "In no relationship is the maxim that `no man can serve two masters' more rigidly enforced than in the attorney-client relationship." Plaquemines Parish Commission Council, 502 So.2d at 1040.[5]
Indeed, this principle of undivided loyalty is firmly embedded in the Rules of Professional Conduct (RPC), adopted by this court pursuant to its exclusive and plenary power to regulate the practice of law. LSA-La. Const. art. II, §§ 1, 2. See also, Chittenden v. State Farm Mutual Automobile Insurance Company, 00-0414, p. 10 (La.5/15/01), 788 So.2d 1140, 1148. Recognizing loyalty as an essential element of the lawyer's relationship to a client, Rule 1.7 of the RPC generally prohibits a lawyer from representing a client *652 if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests.[6] This duty of loyalty continues even after the termination of the attorney-client relationship.[7] Rule 2.1 of the RPC imposes an affirmative obligation upon a lawyer to exercise independent professional judgment and to render candid advice to his or her client, thereby underscoring the importance of avoiding any divided loyalties that might cloud that independent judgment.[8]
Drawing upon the principle of undivided loyalty embodied in these rules, this court has adopted the traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting on his client's behalf. Penalber, 550 So.2d at 581. The avowed intent of the court in adopting this view was not to reduce an attorney's responsibility for his or her work, but to prevent a chilling effect on the adversarial practice of law and to prevent a division of the loyalty owed to the client. Id.; Montalvo, at 4, 637 So.2d at 130. Although addressing the issue of an attorney's duty to his client's adversary, Penalber clearly acknowledges the primacy of the attorney's duty of undivided loyalty, and accentuates the principle that this duty must not be subject to erosion or diversion.
Based on the foregoing precepts and precedent, we conclude that it is fundamental to the attorney-client relationship that an attorney have an undivided loyalty to his or her client. This duty should not be diluted by a fiduciary duty owed to some other person, such as co-counsel, to protect that person's interest in a prospective fee. While, as a practical matter, both the client and co-counsel stand to benefit from any recovery, their interests are not always identical[9]. It would be inconsistent *653 with an attorney's duty to exercise independent professional judgment on behalf of his client to impose upon him a fiduciary obligation to take into account the interests of co-counsel in recovering any prospective fee.
Of course, as a review of Scheffler's petition reveals, the facts of this case, as pleaded, do not reveal the existence of an actual conflict between the duty of utmost fidelity or loyalty Perdigao and/or Adams and Reese owed the client, Boomtown, and Scheffler's interest in maintaining his retainer agreement with Boomtown. Perdigao's alleged misconduct in this instance did not in any sense serve or advance Boomtown's interests. Nevertheless, following the lead of the California Supreme Court in Beck, we find that, in this context, adoption of a bright-line rule is appropriate to avoid even the potential specter of divided loyalty. Besides avoiding conflicts of interest between an attorney and his or her client, a bright-line rule protects the confidentiality of attorney-client communications and avoids the risk that an attorney sued by co-counsel for breach of fiduciary duty might be tempted to disclose a confidential communication in his or her defense.
Accordingly, we hold that, as a matter of public policy, based on our authority to regulate the practice of law pursuant to the constitution, no cause of action will exist between co-counsel based on the theory that co-counsel have a fiduciary duty to protect one another's prospective interests in a fee. To allow such an action would be to subject an attorney to potential conflicts of interest in trying to serve two masters and potentially compromise the attorney's paramount duty to serve the best interests of the client.[10]
Given our holding, it is apparent that Scheffler cannot amend his petition to state a cause of action against co-counsel for breach of a fiduciary duty to protect his interest in prospective fees, as Louisiana law does not countenance such an action. Pursuant to LSA-C.C.P. art. 934, such a finding would require us to dismiss Scheffler's action as to the claim for breach of fiduciary duty. ("If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed.").[11]
*654 Because we are not prepared, on the basis of the limited record and the argument before this court, to find as a matter of law that the basis for Adams and Reese's remaining objections to Scheffler's petition are without merit, we reverse the judgment of the district court insofar as it overrules the exception of no cause of action with respect to Scheffller's claim for breach of fiduciary duty.

CONCLUSION
For the foregoing reasons, the judgment of the district court is reversed insofar as it overrules the exception of no cause of action as to plaintiff's claim for breach of fiduciary duty.
REVERSED.
JOHNSON, J., concurs.
NOTES
[1] This court placed Perdigao on interim suspension. In re Perdigao, 04-2423 (La.10/1/04), 883 So.2d 439.
[2] This court has recognized that an agreement by an attorney who has been retained to prosecute claims on a contingent fee to share the fee with another attorney who is employed to act as counsel in the litigation establishes between the attorneys the relationship of joint adventurers. McCann v. Todd, 203 La. 631, 639, 14 So.2d 469, 471 (1943). The relationship of joint venture is fiduciary in character, Hayes v. Muller, 245 La. 356, 366, 158 So.2d 191, 194 (1963), and is generally governed by the law of partnership, imposing upon all the participants the obligation of loyalty to the joint concern and of the utmost good faith, fairness, and honesty in their dealings with each other with respect to matters pertaining to the enterprise. Grand Isle Campsites, Inc. v. Cheek, 262 La. 5, 22, 262 So.2d 350, 356 (1972).

In his petition in this case, Scheffler alleges none of the elements necessary to find the existence of a joint venture between himself and Perdigao and Adams and Reese. A joint venture, like a partnership, is a juridical person, distinct from its partners, created by an agreement between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit. Broadmoor, LLC v. Ernest N. Morial New Orleans Exhibition Hall Authority, 04-0211, 04-0212, p. 18 (La.3/18/04), 867 So.2d 651, 663.
Rather than allege the existence of an agreement between the attorneys to combine their efforts in determined proportions and collaborate at mutual risk for common profit, the petition alleges that Scheffler was instructed by the mutual client to "work with and answer to Perdigao," an allegation antithetical to the existence of a joint venture agreement between the attorneys. Moreover, there is no allegation of an agreement between the attorneys to share fees; instead, the petition avers that Boomtown compensated Scheffler for his services on a fixed monthly retainer basis.
[3] Judge Murray also made this point in her dissent.
[4] Through their written agreements, the attorneys confected a classic joint venture.
[5] As observed by counsel for Adams and Reese, the maxim that "no man can serve two masters" is taken from a Biblical passage. Mathew 6:24.
[6] Rule 1.7 provides:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing
[7] Rule 1.9(a) of the RPC prohibits a lawyer who has formerly represented a client from representing another person in the same or a substantially related matter in which that person's interests are materially adverse to the interest of the former client unless the former client gives informed consent, confirmed in writing.
[8] Rule 2.1 of the RPC provides, in pertinent part:

In representing a client, a lawyer shall exercise independent professional judgment and render candid advice.
[9] For example, in Saunders v. Weissburg & Aronson, 74 Cal.App.4th 869, 87 Cal.Rptr.2d 405 (1999), the plaintiff, an attorney, and the defendant, a law firm, had jointly represented a group of hospitals in an underlying action against the Medicare program. The plaintiff attorney sued the defendant law firm, alleging that the defendant had breached certain duties owed to him by influencing the hospitals to accept a settlement that was, because of their differing fee agreements with the separate hospitals, more favorable to the defendant than it was to the plaintiff. The hospitals were perfectly content with the settlement; only the plaintiff attorney believed his interests had been adversely affected.
[10] There is only one reported decision in Louisiana that suggests that a breach of the fiduciary duty owed by attorneys engaged in a joint venture might in some circumstances support a cause of action for intentional interference with contract. Krebs v. Mull, 97-2643 (La.App. 1 Cir. 12/28/98), 727 So.2d 564, writ denied, 99-0262 (La.3/19/99), 740 So.2d 119. To the extent that Krebs deviates from the bright-line rule announced herein that no cause of action will exist between co-counsel based on the theory that co-counsel have a fiduciary duty to protect one another's prospective interests in a fee, it is disapproved.
[11] However, this case presents itself in a unique procedural posture. The district court judgment did not confine itself to overruling the peremptory exception of no cause of action. Rather, the judgment maintains Adams and Reese's exception of no cause of action as to Scheffler's allegations of negligent interference with a contractual relationship, intentional interference with a contractual relationship, negligence, unfair trade practices, fraud, respondeat superior liability, and negligence (as to Adams and Reese only). It overrules the exception only with respect to the allegation of breach of fiduciary duty.

Two separate applications for supervisory writs were filed in connection with the judgment  one by Adams and Reese protesting the overruling of the exception as to the claim for breach of fiduciary duty and one by Scheffler protesting the maintaining to the exception as to the remaining claims  resulting in two separate rulings by different panels of the court of appeal. Only one of the court of appeal actions is before us here; the one addressing the claim for breach of fiduciary duty.