RENTON PROPERTIES, LLC

VERSUS

213 UPLAND, LLC, MARGARET W. TONTI,
ROBERT J. TONTI, OHIO MANAGEMENT,
LLC, CORPORATE REALTY LEASING
COMPANY, INC., MARY CARRONE,
EMILY KRAMER, CHARLES R. CANNON, III,
JODYCORP, LLC, DUFF FRIEND, AND
R. LEWIS MCHENRY

NO. 20-C-133

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 775-357, DIVISION "K"
HONORABLE ELLEN SHIRER KOVACH, JUDGE PRESIDING

October 05, 2020

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Stephen J. Windhorst

**WRIT GRANTED; JUDGMENT REVERSED; SUMMARY JUDGMENT**
**GRANTED; MOTION TO STRIKE DENIED**
    **SMC**
    **JGG**
    **SJW**

COUNSEL FOR PLAINTIFF/RESPONDENT,
RENTON PROPERTIES, LLC
    Robert L. Raymond

COUNSEL FOR DEFENDANT/RELATOR,
R. LEWIS MCHENRY
    Richard C. Stanley
    Eva J. Dossier
    Endya L. Hash

**CHEHARDY, C.J.**

In this writ application, relator, R. Lewis McHenry ("McHenry"), seeks review of the trial court's denial of his motion for summary judgment. Following *de novo* review, we grant the writ application, reverse the trial court's ruling, and grant summary judgment in favor of relator, McHenry.

**Factual and Procedural History**

This case arises out of an alleged breach of an agreement by defendant, 213 Upland, LLC ("Upland"), to sell commercial property located at 213 Upland Avenue in River Ridge, Louisiana ("the Property"), to plaintiff, Renton Properties, LLC ("Renton"). On August 10, 2017, Renton submitted an agreement to purchase the Property for $365,000.00 ("Renton Agreement"). Renton's offer stated, "Upon acceptance of this offer, SELLER and PURCHASER shall be bound by all of its terms and conditions and PURCHASER becomes obligated to deposit immediately with Seller's agent $10,000.00 and failure to do so shall be considered a breach of this agreement."

On August 14, 2017, Upland, through Margaret Tonti, counter-offered for $425,000.00 with a deposit of $20,000.00.[1] The counter-offer was accepted by Renton on Thursday, August 17, 2017. The purchase agreement required Renton, upon acceptance, to "immediately" tender the deposit with Upland's agent.

Meanwhile, on August 15, 2017, a second party, Charles R. Cannon, III, put in an offer to purchase the Property for $500,000.00 ("Cannon Agreement"). On August 17, 2017, Upland counter-offered accepting

---

[1] Upland is owned by co-defendant, Margaret W. Tonti, who is also the sole member of the company. Her son, Robert Tonti, is also involved in the company.

Cannon's confidential backup offer, "subject to termination of the Purchase Agreement with Counter signature of today's date and *presently in effect between Seller and third party purchaser* [Renton]." (Emphasis added). Cannon executed Upland's counter offer on Friday, August 18, 2017.

On Monday, August 21, 2017, Renton's agent attempted to hand-deliver its $20,000.00 deposit check to the seller's agent, but the agent "refused" the check alleging that delivery was "untimely." Testimony from the agents revealed that relator, McHenry, counsel for the sellers, Margaret Tonti and Upland, instructed them not to accept the check from Renton's agent.

Also on Monday, McHenry, pursuant to his client's instructions, emailed Renton and his agent. In that email, McHenry informed Renton that its failure to deliver the deposit check on Thursday, August 17, 2017, with his signed acceptance of Upland's counter offer meant that the deposit was not delivered "immediately," which constituted a breach of the Renton Agreement. McHenry declared the agreement "null and void and without any force or effect."

At that point, Renton's attorney, Patrick McGoey ("McGoey"), began discussions with McHenry regarding the alleged nullity and enforceability of the Renton Agreement. In his affidavit attached to Renton's opposition to McHenry's motion for summary judgment,[2] McGoey details discussions he had with McHenry during the week of August 21, 2017, through August 25, 2017. On Monday, August 21, 2017, McHenry informed McGoey that the Upton wanted "out of the deal" with Renton and that it no longer intended to

---

[2] Because Patrick McGoey is now a witness in this litigation, he is no longer representing Renton as counsel. While McHenry does not concede that each of the allegations contained in McGoey's affidavit is true, he relies on the affidavit "so as to construe the facts in the light most favorable to the non-mover", Renton.

proceed with the former deal. McHenry proposed that Renton "come up with a number" it wanted to walk away from the deal. McGoey related the offer to Renton, who declined.

On Tuesday, August 22, 2017, McGoey emailed McHenry trying to get the closing back on track and advised that Renton "prefer[ed] not to litigate" the matter, but "was prepared to." McGoey received no response until the following day.

On Wednesday, August 23, 2017, on behalf of Upland, McHenry offered an "undisclosed amount to not only Renton but now his real estate agent for his lost commission on the sale" "to go away." However, again Renton declined. On that same day, McHenry then offered a "second option" to Renton, which was to increase its (already accepted) offer by $50,000.00 and shorten the due diligence period. Later that day, in a follow-up conversation between McGoey and McHenry, McGoey advised that Renton rejected this second option. McGoey then set forth a counter offer on behalf of Renton with an ultimatum: Renton would not agree to pay an increased purchase price, but would agree to shorten the due diligence period, however, if the parties could not come to terms by Friday, August 25, 2017, he would file a lawsuit and a notice of *lis pendens*.

In the interim, McHenry assisted Upland in facilitating the sale of the Property to Cannon and JodyCorp, LLC.[3] The cash sale of the property to JodyCorp, LLC for $500,000.00 occurred on Friday, August 25, 2017, and was recorded that same day at 12:01 p.m.

On Friday, August 25, 2017, at 1:06 p.m., Renton filed a petition naming 213 Upland, LLC as a defendant, seeking specific performance or, alternatively, damages, and injunctive relief. On February 6, 2018, Renton

---

[3]     JodyCorp, LLC, is a limited liability company that was formed by co-defendant, Charles Cannon.

filed its First Amended and Supplemental Verified Petition naming ten more defendants, including, among others, counsel for Upland, Lewis McHenry, relator-herein. In its amended petition, Renton alleges, in addition to specific performance, that defendants breached the Renton Agreement contract; that defendants were negligent; that defendants committed fraud; and that defendants participated in unfair trade practices in violation of the Louisiana Unfair Trade Practices Act ("LUPTA"), La. R.S. 51:1401, *et seq*. With respect to McHenry, the amended petition specifically stated that he was negligent under the Louisiana Rules of Professional Conduct as he had a duty not to controvert the validity of the Renton Agreement unless there was a good-faith basis in law to do so; he had a duty to refrain from making false statements of fact or law to Renton or Renton's lawyer; he had a duty to disclose the backup offer; and, he had a duty to avoid assisting his clients in "defrauding Renton of its right to acquire" the property.

On November 4, 2019, McHenry filed a motion for summary judgment alleging that Renton cannot prove that McHenry was a party to the contract that was allegedly breached, that McHenry owed any duty of care to Renton, or that McHenry made any false misrepresentations. In support of his motion, McHenry attached the following exhibits: (1) the Renton Purchase Offer dated August 10, 2017; (2) 213 Upland, LLC's Counter-Offer dated August 14, 2017; (3) 213 Upland, LLC's Counter-Offer signed by Edward Renton (undated); and (4) the affidavit of Patrick S. McGoey, former counsel for Renton Properties, LLC.

Renton opposed McHenry's summary judgment and attached to its motion the following: (1) the affidavit of Patrick S. McGoey; (2) the Renton Purchase Offer dated August 10, 2017; (3) 213 Upland, LLC's Counter-Offer dated August 14, 2017; (4) 213 Upland, LLC's Counter-Offer signed

by Edward Renton (undated); (5) a letter from McHenry dated August 21, 2017; (6) emails (with attachments) to/from McHenry and Tonti and the real estate brokers and title company regarding 213 Upland from August 21, 2017 through August 25, 2017; (7) JeffNet listing of Cash Sale filed on August 25, 2017 in the Conveyance Records at CB 3393, Page 355; (8) an excerpt of the deposition of Meg Carrone of Corporate Realty, agents for 213 Upland, LLC and the Tontis; (9) an excerpt of the deposition of Emily Kramer of Corporate Realty, agents for 213 Upland, LLC and the Tontis; (10) the First Amended and Supplemental Verified Petition with attachments; (11) an excerpt of the deposition of Charles R. Cannon, III, the buyer of the Property; and (12) an excerpt of the deposition of Danya Duffy, title attorney at Acquisition Title.

On January 8, 2020, the trial court heard McHenry's motion for summary judgment. In that hearing, McHenry's counsel noted that McHenry had no duty to an opposing party or to opposing counsel. Counsel further argued that McHenry's actions during the week leading up to the sale of the Property did not amount to fraud because he did not make any false statements.

In opposition, Renton's counsel noted, according to McGoey's affidavit, that on Wednesday, August 23, 2017, McHenry told McGoey that Upland would still sell the Property to Renton, if Renton raised its offer by $50,000.00 and allowed a shorter due diligence period. Renton's counsel noted that this "second option" had to be an intentional false statement by McHenry to lull Renton into waiting to file a notice of *lis pendens* because the evidence attached to Renton's opposition to summary judgment reveals that Upland had already accepted Cannon's "backup" purchase offer on August 17, 2017, and by August 23, was actively moving forward with the sale of the Property to Cannon and JodyCorp, LLC, which occurred on August 25, 2017.

Further, there is evidence that the notarization of the Act of Sale by McHenry was allegedly improper as evidence suggests that neither he nor the witnesses were in Covington, Louisiana to witness Margaret Tonti signing the Act of Sale on behalf of Upland. McHenry and his witnesses (his paralegals) have been subpoenaed but have not appeared for their depositions.

At the close of the summary judgment hearing, the trial judge denied McHenry's motion. In doing so, the trial judge questioned McHenry's intent in failing to timely respond to McGoey's counter offer to shorten the due diligence period before moving ahead with the sale of the Property to the back-up purchaser. The trial judge specifically noted:

> And I guess it goes back to an issue of intent, at this point. Rather than just saying, I reject the counter offer, they allowed Mr. McGoey to think you're considering the counter offer, and you're getting back to me. … what was the intent in doing it that way?
>
> ***
>
> Because if the property is already spoken for, you don't act as if the property can still be purchased. … I don't really know, but it seems to me that there are unanswered questions that preclude summary judgment at this juncture. It's just not connecting up in a fashion that summary judgment needs to connect up, in my mind.
>
> ***
>
> Ultimately, and I guess this is where I am, I think there are issues of intent that preclude summary judgment at this juncture.

In short, the trial court reasoned that if Renton could establish the requisite intent, McHenry's failure to disclose to opposing counsel that Upland had a backup offer, and his failure to respond to opposing counsel's counter offer before Upland moved forward with the sale of the Property to the backup purchaser, *could "potentially"* constitute fraud, which she concluded was a question of fact for the jury's determination. Accordingly, the trial court denied McHenry's motion for summary judgment. This writ application followed.

**Issues Presented for Review**

The issues presented by relator McHenry for this Court's review include: (1) whether an attorney can be liable for breach of a contract to which the attorney is not a party; (2) whether an attorney can be liable to a client's adversary for negligence; and (3) whether an attorney who is engaged in adversarial negotiations on behalf of his client to resolve a dispute owes any "duty" to the opposing party and/or its counsel to disclosure information regarding his client's confidential business dealings in order to assist that party in formulating its strategy in the context of the dispute. In the context of the instant case, McHenry moved for summary judgment on the basis that he could not be held liable to Renton for an alleged breach of the Renton Agreement as he was not a party to the contract, he could not be held personally liable to Renton for negligence absent proof of an intentional tort, and that he owed no legal duty to disclose to opposing counsel that his client was pursuing a confidential backup offer to purchase the Property or to respond to Renton's counter offer.

**Law and Discussion**

*Standard of Review*

Appellate review of a trial court's ruling on a motion for summary judgment is *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate—*i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. Louisiana Power & Light*, 06-1181 (La. 3/9/07), 951 So.2d 1058, 1070. A court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B).

On a motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. La. C.C.P. art. 966(D)(2); *Murphy v. Savannah*, 18-0991 (La. 5/8/19), 282 So.3d 1034, 1038.

Here, Renton brought claims against its adversary's attorney, McHenry, among others, for breach of contract, negligence, fraud, and violations of LUPTA. We will address each claim separately.

### *Breach of Contract Claim*

In order to succeed on a breach of contract claim, the plaintiff must prove the existence of the contract, a breach of the obligations therein, and damages. *New Orleans Craft Temple, Inc. v. Grand Lodge of Free Masons of the State of Louisiana*, 13-525 (La. App. 5 Cir. 12/19/13), 131 So.3d 957, 964; *Favrot v. Favrot*, 10-986 (La. App. 4 Cir. 2/9/11), 68 So.3d 1099, *writ denied*, 11-636 (La. 5/6/11), 62 So.3d 127. No action for breach of contract may lie in the absence of privity of contract between the parties. *Rivnor Properties v. Hebert O'Donnell, Inc.*, 633 So.2d 735, 742 (La. App. 5th Cir. 1994).

In the instant case, Renton contends that McHenry is liable for breach of the Renton Agreement. Renton, however, has failed to produce any evidence that McHenry was a party to that contract, which was solely between Renton and Upland. Accordingly, because Renton has failed to establish an essential element of its claim against McHenry for breach of contract, *i.e.*, privity of contract, we find that the trial court erred in denying McHenry's motion for summary judgment

as to this issue.  In the absence of any showing of genuine issues of material fact, we must render summary judgment in favor of McHenry on the breach of contract claim.

### Negligence Claim

The Louisiana Supreme Court has narrowly defined the circumstances in which an attorney can be sued by a client's adversary for alleged tortious actions that the attorney undertook on behalf of his client.  As explained by the Court in *Penalber v. Blount*, 550 So.2d 577, 581 (La. 1989):

> Louisiana subscribes to the traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting in his client's behalf.  (Citations omitted.)  A non-client, therefore, generally cannot hold his adversary's attorney personally liable for either malpractice or negligent breach of a professional obligation.  The intent of this rule is not to reduce an attorney's responsibility for his or her work, but rather to prevent a chilling effect on the adversarial practice of law and to prevent a division of the loyalty owed a client.  (Citation omitted).
>
> An attorney's duty is to zealously represent a client.  To accomplish this obligation, adversarial counsel must not be hampered by fear of personal liability for negligently injuring his client's opponent.  The attorney's primary duty is to his client.  As such, not even the Rules of Professional Conduct create actionable duties for negligent injury of a client's adversary or negligent breach of professional obligations which might run in favor of his client's adversary.

The avowed intent of this rule, that an attorney generally does not owe a legal duty to his client's adversary when acting on his client's behalf, is not to reduce an attorney's responsibility for his or her work, but to prevent a chilling effect on the adversarial practice of law, to prevent a division of the loyalty owed a client, and to encourage the attorney's zealous representation of his client.  *See Montalvo v. Sondes,* 637 So.2d 127, 130 (La. 1994).  An attorney's paramount duty is, and must be, to his client.  *Scheffler v. Adams & Reese, LLP*, 06-1774 (La.

2/22/07), 950 So.2d 641, 651. In fact, our law adheres to the principle that in no other agency relationship is a greater duty of trust imposed than in that involving an attorney's duty to his client. *Id.* "In no relationship is the maxim that 'no client can serve two masters' more enforced than in the attorney-client relationship." *Id.* citing *Plaquemines Parish Commission Council*, 502 So.2d 1034, 1040 (La. 1987).

It is undisputed that Upland and Renton were adverse to one another and that both parties were represented by counsel in negotiations that took place over a five-day period to resolve the parties' dispute regarding the enforceability of the Renton Agreement and Renton's threatened law suit. As expressly set forth in Renton's amended petition, "*[a]t all relevant times* [during that five-day period], Lewis McHenry *acted as the legal counsel* and advisor to 213 Upland, Margaret Tonti, and Ohio Management in connection with the sale of the Property." [Emphasis supplied.] Because Louisiana law does not recognize a cause of action by a non-client against his adversary's attorney for malpractice or negligent breach of a professional obligation, Renton's claims against McHenry, its adversary's counsel, arising out of his alleged negligent conduct or his alleged violations of the Rule of Professional Conduct while acting on behalf of Upland must be dismissed as a matter of law.

Although a non-client cannot hold his adversary's attorney personally liable for malpractice or negligent breach of a professional obligation, the Supreme Court in *Penalber*, *supra*, determined that an attorney may be held personally liable to a non-client for his intentional tortious conduct:

> Intentionally tortious actions, ostensibly performed for a client's benefit, will not shroud an attorney with immunity. Consequently, even though an attorney does not generally owe a duty to his client's adversary, under the broad ambit of La. C.C. art. 2315, an attorney may be held personally accountable for his intentional tortious conduct. …

*Penalber*, 550 So.2d at 582; *see also Montalvo v. Sondes,* 637 So.2d at 130.  In order for a non-client to prevail in a suit against his adversary's attorney based on the commission of an alleged intentional tort, he must prove that the attorney acted with a specific malice or intent to personally inflict direct harm upon his client's adversary.  *Id.*  In *Montalvo*, the Supreme Court recognized that "identifying an intentional tort in the context of an attorney's actions may be more difficult than identifying a traditional intentional tort."  *Montalvo*, 637 So.2d at 130.  For example, "the mere filing of a lawsuit, even if the suit appears meritless on its face, is not enough, since the attorney may be simply the instrument through which the client invokes judicial determination."  *Id.* (Citations omitted.)  Consequently, in order for Renton to prevail on its action against McHenry for an intentional tort and defeat summary judgment in the instant case, it had to adduce evidence that it would be able to carry its burden of proving at trial that, during the negotiations with Renton's counsel, McHenry acted on his own behalf, rather than as an instrument of Upland, with a specific malice or with the intent to personally cause direct harm to Renton in connection with the sale of the Property.

Based upon our *de novo* review of the record, we find that Renton failed to adduce evidence showing that McHenry acted on his own behalf, rather than acting as an instrument of his client.  Further, we find there is no factual basis upon which to conclude that McHenry was acting with a specific malice toward Renton or with any specific intent to personally harm Renton.  In short, we find there is no evidence establishing that McHenry personally committed an intentional tort against Renton.  Even if there were deficiencies in the act of sale, such a failure does not support an inference of specific malice or intent to harm.  At most, McHenry's actions were negligent.  Under the clear language of *Penalber* and *Montalvo*, such negligence is insufficient to hold an attorney liable to a non-client such as Renton.  Consequently, we find the trial court erred in failing to grant

McHenry's motion for summary judgment on the negligence claims, including the claim for intentional tort.

### *Renton's Delictual Fraud Claim*

McHenry alleges that the trial court erred by denying his motion for summary judgment as to Renton's claims for fraud and claims under LUTPA. We agree.

Louisiana jurisprudence indicates that in order to recover in an action for delictual fraud, a plaintiff bears the burden of proving three elements: (1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resultant injury. *Becnel v. Grodner*, 07-1041 (La. App. 4 Cir. 4/2/08), 982 So.2d 891, 894. For purposes of the tort of fraud, the intent to deceive is a specific intent. *Chateau Homes by RJM, Inc. v. Aucoin*, 11-1118 (La. App. 5 Cir. 5/31/12), 97 So.3d 398, 404. A cause of action for delictual fraud requires the existence of a duty. *Becnel*, 982 So.2d at 894. Additionally, in order to prevail in an action for fraud due to silence or suppression of the truth, there must be a duty to speak or disclose information. *Id.*; *Greene v. Gulf Coast Bank*, 593 So.2d 630, 632 (La. 1992). Such a duty arises when there is a fiduciary relationship between the parties. *Becnel*, 982 So.2d at 894. As previously iterated, an attorney's paramount duty is, and must be, to his client. *Scheffler*, 950 So.2d at 651. This duty should not be diluted by a fiduciary duty owed to some other person. *Id.* at 652. Moreover, an attorney has a duty to zealously represent his client and, in order to do so, he must not be hampered by fear of personal liability for negligently injuring his client's opponent. *Penalber*, 550 So.2d at 581.

In the instant case, Renton alleges that McHenry committed the following acts of fraud: (1) his letter to Renton, advising that the Renton Agreement was null and void and without legal effect because Renton failed to "immediately" pay the deposit upon acceptance of the counter offer, had no basis in law; (2) he instructed

Upland's agents not to accept Renton's deposit check; (3) he engaged in settlement negotiations with McGoey wherein he intentionally made false misrepresentations regarding his client's willingness to sell the Property to Renton when McHenry knew that his client had no intention of moving forward with the Renton Agreement as Upland already had in place an executed backup purchase agreement with Cannon on which a deposit had been accepted; and (4) he intentionally did not return McGoey's phone call or respond to Renton's counter offer prior the act of sale of the Property to Cannon in order to lull Renton into waiting to file a notice of *lis penden*, thereby precluding Renton from asserting any rights to acquire the Property. Renton contends, and the trial court agreed, that genuine issues of material fact precluding summary exist regarding McHenry's "intent" with respect to the actions he took in dealing with Renton and Renton's counsel.

To the contrary, McHenry avers that there are no factual matters in dispute and that Renton cannot meet its burden of proving the necessary elements to establish a claim for delictual fraud against McHenry. Specifically, McHenry argues that Renton has failed to submit evidence showing that he made any false representations to Renton or its counsel during their negotiations over the five-day period at issue. From the outset, McHenry advised Renton's counsel that Renton's failure to immediately pay the deposit upon acceptance nullified the Renton agreement and, on this basis—that the Renton Agreement was null and unenforceable—he advised his client's agents not to accept the late deposit. Even if it is ultimately determined that McHenry's legal theory regarding the nullity and enforceability of the Renton Agreement was deficient or wrong, we find that his pursuing this theory does not rise to the level of a fraudulent act or material misrepresentation for which he could be held personally accountable to Renton.

We also find that Renton's contention that McHenry's alleged fraudulent misrepresentations and/or omissions during negotiations between opposing counsel

constitute fraudulent conduct subjecting McHenry to personal liability to Renton—*i.e.*, "making the phone call to offer property at a higher price knowing the property is under contract with another"—is not supported by the law or the evidence. Renton has failed to point to any specific misrepresentation made by McHenry to Renton or its counsel during their negotiations to possibly settle Renton's threatened litigation. Renton has not shown that McHenry's offer on behalf of Upland to sell the Property to Renton at an increased price was false. At the time the statement was made, Upland retained title to the Property and its agreement with Cannon was specifically contingent upon the Renton deal falling through. Therefore, because Renton rejected this offer made by McHenry on behalf of Upland, there is no way for Renton to prove McHenry's statement was false or that Upland would not have sold the Property to Renton had it accepted the subsequent offer.

Moreover, a fraud claim cannot be premised on the fact that what an attorney and his client discuss during settlement negotiations is different from what the same attorney talks about with his opposing counsel during settlement negotiations. *See Castle v. Castle*, 13-271 (La. App. 3 Cir. 10/9/13), 123 So.3d 1267, 1272. Moreover, no special fiduciary relationship existed between McHenry and Renton, or between McHenry and Renton's counsel, McGoey. In this regard, under the facts of this case, McHenry owed no duty to Renton or its counsel to disclose any of the confidential business dealings of his client, Upland, related to the sale of the Property, including any information relative to the Cannon Agreement. In fact, had McHenry disclosed such confidential client information to McGoey, he would have put himself in peril of breaching the fiduciary duty he owed to his client.

In his final argument, Renton contends that McHenry knew that if the parties did not come to terms on the Renton Agreement by Friday, August 25, 2017,

McGoey was going to file suit and a notice of *lis pendens*. As a result, Renton contends that McHenry intentionally did not return McGoey's phone call in order to lull McGeoy into believing that Upland was still considering selling the Property to Renton and so that McHenry could facilitate and expedite the sale of the Property to Cannon and have the act of sale recorded before McGoey followed through with Renton's ultimatum and filed the notice of *lis pendens*. Renton argues that McHenry's omissions resulted in a deprivation of its rights to assert a claim against the Property and rises to the level of fraud. We disagree.

Though Renton knew from the outset that Upland wanted out of the deal, and Renton had previously rejected Upland's two options to form a new deal, Renton's counsel unilaterally proposed the ultimatum—if the parties could not come to terms and move forward with the Renton Agreement by Friday, August 25, 2017, Renton would file suit and a notice of *lis pendens*. We find that McHenry, acting on behalf of his client, owed no legal duty to Renton or its opposing counsel to return McGoey's phone call and respond to Renton's ultimatum of threatened litigation before the Friday deadline, or to refrain from pursuing other potential sale options for the Property while Renton decided whether it was going to act upon its threat. We also find that, given the undisputed adversarial nature of the negotiations, McHenry owed no duty to opposing counsel to apprise him of the potential consequences of Renton's unilateral decision to wait until Friday to file the notice of *lis pendens* that it had been threatening to file since Tuesday of that week. Nor did McHenry owe any legal duty to advise McGoey that his client was moving forward with a sale of the Property to the backup purchaser, Cannon, as the Rules of Professional Conduct specifically forbid a lawyer from revealing information relating to the representation of a client. Rather, McHenry's sole duty was to his client, Upland. Accordingly, absent a legal duty owed by McHenry to Renton or its counsel, Renton cannot sustain an

action in delictual fraud against McHenry for actions he took on behalf of his client.  *See Becnel*, 982 So.2d at 894.

### Renton's Claim under the Louisiana Unfair Trade Practices Act

Renton's remaining claim against McHenry is under LUTPA, La. R.S. 51:1401, *et seq.*  In LUTPA, the legislature declared it to be unlawful to engage in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce."  La. R.S. 51:1405.  Because of the broad sweep of this language, "Louisiana courts determine what is a LUTPA violation on a case-by-case basis."  *Quality Environmental Processes, Inc. v. I.P. Petroleum Co.,Inc.*, 13-1582 (La. 5/7/14), 144 So.3d 1011, 1025.  The Louisiana Supreme Court has consistently held that in establishing a LUTPA claim, a plaintiff must show that "the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious."  *Id.* (citing *Cheramie Services, Inc. v. Shell Deepwater Prod.*, 09-1633 (La. 4/23/10), 35 So.3d 1053, 1059.  "[T]he range of prohibited practices under LUTPA is extremely narrow," as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence.  *Quality Environmental Processes, Inc.*, 144 So.3d at 1025.  Moreover, conduct that offends established public policy and is unethical is not necessarily a violation under LUTPA.  *Id.*  "The goals of LUTPA were not intended to ensure ethical and fair competition between attorneys" engaged in adversarial negotiations.  *See Quality Environmental Processes, Inc.*, *supra*.

Here, Renton's claim against McHenry under LUTPA is based on the same allegations it asserted in support of its fraud claim.  Specifically, Renton avers that McHenry's "material misrepresent[ation]" to McGoey that the Property could still be purchased by Renton while at the same time coordinating the sale of the Property to Cannon, constituted an "unfair and deceptive trade practice" subjecting him to personal liability to Renton for the damages it suffered as a result; *i.e.*,

deprivation of its right to acquire the Property. For all of the reasons previously stated relative to Renton's fraud claim, its claim against McHenry under LUTPA likewise fails.

In addition, we note that not only has Renton failed to submit any evidence of material misrepresentations made by McHenry during his negotiations with opposing counsel, Renton had failed to present evidence establishing that McHenry was acting in any manner *other than on behalf of his client* that would subject him to personal liability to Renton. Consequently, we find that McHenry's alleged actions on behalf of Upland do not fall under the protection of LUTPA's narrow goal of protecting against egregious actions of fraudulent, deceitful, and unfair business practices to promote and foster health and fair business competition. Rather, McHenry's alleged actions are more appropriately governed by the Louisiana Code of Professional Conduct and/or the Louisiana Code of Ethics, and do not give rise to a cause of action against an attorney by a non-client. *See Thibaut, Thibaut, Garrett and Bacot v. Smith and Loveless, Inc.*, 576 So.2d 532, 537 (La. App. 1st Cir. 1990), *writ denied*, 580 So.2d 676 (La. 1991). LUTPA is an act of the legislature. The legislature cannot enact laws defining or regulating the practice of law in any respect; the Louisiana Supreme Court has the exclusive and plenary power to define and regulate all facets of the practice of law, including the conduct of attorneys, and this law cannot be applied to regulate or define the practice of law. *Id.* In short, given the undisputed facts of this case, the law does not support a claim by Renton against McHenry under LUTPA. Accordingly, we conclude the trial court erred in failing to grant summary judgment in favor of McHenry on Renton's LUTPA claim as a matter of law.

**Motion to Strike**

Renton filed a motion to strike the supplemental reply brief filed by McHenry on the basis that this Court's order assigning the matter for oral argument

did not provide for any further briefing by the parties beyond the submission of their respective supplemental briefs. Therefore, Renton contends that under the Uniform Rules–Courts of Appeal, Rule 4, McHenry's supplemental reply brief was not permitted without first obtaining leave of court. We deny Renton's motion to strike.

## CONCLUSION

In summary, Renton has presented no evidence showing that a genuine issue of material fact exist and/or that it will be able to carry its burden of proving at trial that McHenry can be held personally liable for breach of the Renton Agreement to which he was not a party; that McHenry can be personally liable to Renton for malpractice or breach of a professional obligation; that McHenry acted with specific malice or with an intent to personally cause Renton harm for which he can be held personally accountable for an intentional tort; that McHenry owed any duty to Renton or its counsel to disclose information regarding Upland's confidential business dealings, or made any affirmative misrepresentations to Renton or its counsel, during negotiations to resolve the dispute between Renton and Upland that rise to the level of fraud; or, that McHenry's alleged actions on behalf of his client fall under the protection of LUTPA. Accordingly, we grant McHenry's writ application, reverse the trial court's judgment, and render judgment in favor of relator, McHenry, granting his motion for summary judgment and dismissing all of Renton's claims against him, with prejudice. Renton's motion to strike is denied.

**WRIT GRANTED; JUDGMENT REVERSED; SUMMARY JUDGMENT GRANTED; MOTION TO STRIKE DENIED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **OCTOBER 5, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
**CLERK OF COURT**

# 20-C-133

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ELLEN SHIRER KOVACH (DISTRICT JUDGE)

| | | |
|---|---|---|
| DEBORAH A. VILLIO (RESPONDENT) | JAMES C. RAFF (RESPONDENT) | MICHAEL L. FANTACI (RESPONDENT) |
| ROBERT L. RAYMOND (RESPONDENT) | ENDYA L. HASH (RELATOR) | EVA J. DOSSIER (RELATOR) |
| RICHARD C. STANLEY (RELATOR) | HOWARD E. SINOR, JR. (RESPONDENT) | MICAH C. ZENO (RESPONDENT) |
| MICHAEL E. BOTNICK (RESPONDENT) | GERALD A. MELCHIODE (RESPONDENT) | JOHN T. BALHOFF, II (RESPONDENT) |
| JEFFERSON R. TILLERY (RESPONDENT) | | |

### MAILED

MICHAEL S. RICCI (RESPONDENT)
ATTORNEY AT LAW
101 WEST ROBERT E. LEE BOULEVARD
SUITE 400
NEW ORLEANS, LA 70124

HEATHER L. KIRK (RESPONDENT)
ATTORNEY AT LAW
201 ST. CHARLES AVENUE
SUITE 5100
NEW ORLEANS, LA 70170-5100