THERIOT, J.
lain this appeal, the plaintiff-appellant, MP31 Investments, LLC (“MP31”) challenges judgments of the Twenty-Second Judicial District Court, denying. MP31’s motion for summary judgment and granting the cross-motion for summary judgment of the defendant-appellee, Harvest Operating, LLC (“Harvest”), that dismissed MP31’s petition for damages, with prejudice. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On October 1, 2007, an agreement of settlement and compromise and receipt and release (“settlement agreement”) was executed between many separate entities that were doing business together to dissolve their relationships'" and reorganize their collective' interests and assets with respect to their oil and gas production operations. Per the settlement agreement, Harvest Group, LLC (“HG”) assigned to MP31 a forty percent (40%) working interest in State "Lease 12002 Well No. 1 and State Lease 12002 Well No. 2, and their related facilities, as well as all associated leases, rights and agreements (collectively called the “MP31 assets” in the settlement agreement). HG further assigned to Harvest a sixty percent (60%) working interest in the MP31 assets.
The settlement agreement required MP31 and Harvest to execute a joint operating agreement (“JOA”) to govern the operation of the MP31 assets. Under the terms of the settlement agreement, the JOA would have to transfer the Site Specific Trust Account No. 06-01 (“SSTA”) to the management of Harvest, with the ac-knowledgement that the SSTA was for the “use, benefit[,] and protection of the owners ... of the working interest in |athe MP31 assets.”[1] In 2008, HG also executed a bill of sale andrpartial assignment of lease for oil, gas and other liquid or gas *753 eous minerals (“assignment”), in which HG assigned to MP31 and Harvest all of its “right, title, and interest in and to” State Lease 12002, with the percentages in the interests being 60% to Harvest and 40% to MP31. The exhibit attached to the assignment that describes State Lease 12002 states that the assignment is “subject [to] all contracts and- agreements bearing against the Interests including”-the SSTA.
MP31 and Harvest entered into a JOA on February 1, 2008. Harvest was designated as “Operator” and MP31 was designated as a “Non-Operator.” Under Article III(B) of'the JOA, titled “Interests of Parties in Costs and Production,” “all costs and liabilities incurred in operations .■ . shall be borne and paid, and all equipme it and materials required in operations” in the MP31 assets will be owned according to each party’s percentage of ownership. Under Article VII(A) of the JOA, titled “Liability- of Parties,”-the liability of the parties is classified as “several, not joint or collective.” It further states that- MP31 and Harvest would each be “responsible only for its obligations, and shall be liable only for its proportionate share of the costs of developing and operating” the MP31 assets.
Harvest’s duty under the JOA as Operator was to “bill [MP31] on or before the last day of each month for [its] proportionate share of the Joint Account for the preceding month.” The JOA defined the “Joint Account” as “the account showing the charges paid and credits received in the conduct of the Joint Operations and which are shared by [MP31 and Harvest].” The 14JO A defined the “Joint Operations” as “all operations necessary or proper for the development, operation, protection, and maintenance of the [MP31 assets].”
At the time of MP31’s and Harvest’s acquisitions, the Louisiana Department of Natural Resources, Office of Conservation (OOC) reassessed the required amount of the SSTA. To comply with the OOC’s reassessment, Harvest, as Operator; transferred $1,146.00 into the SSTA to bring the account balance to $216,712.00, which was the amount assessed • by the OOC. Forty percent (40%) of the $1,146.00 was billed to and paid by MP31.,
On May 1, 2012, both MP31 and Harvest entered into their own purchase and sale agreements with Texas Petroleum Investment Company (“TPIC”), whereby they sold to TPIC their respective working interests in the MP31 assets. While the two purchase and sale agreements are identical in most respects,' Harvest’s purchase and sale agreement contains the additional following clauses not found in MP31’s purchase and sale agreement, to wit:
2.6 Security. As a principal cause and consideration for [Harvest] entering into this transaction, [TPIC] shall assume all obligations of [Harvest] under that certain [SSTA] established by [Harvest] with the Department of Natural Resources for the State of Louisiana. Upon approval by the Department of Natural Resources of the transfer of the SSTA by [Harvest] to [TPIC], [Harvest] shall have no further obligations with respect to the SSTA. Buyer shall fully fund the SSTA so that [Harvest] may withdraw all funds to which [Harvest] is legally entitled.
⅜ ‡ ⅜
10.1(a)(vii) [TPIC] shall execute and deliver the Department of Natural Resources Estimate of Oilfield Site Restoration Costs for the SSTA referenced in Section 2.6 ... including the full funding of the SSTA by [TPIC] for the transfer of the SSTA by [Harvest] and assumption by [TPIC] of all liabilities associated with the SSTA so that [Harvest] may withdraw all existing cash funds from *754 the SSTA to which [Harvest] is legally entitled.
Ik(íx) [TPIC] shall folly fund the SSTA ... referenced in Section 2.6— as may be required by the Office of Conservation, Department of Natural Resources of,the State of Louisiana.
The manager of MP31 signed the MP31 purchase agreement as “Seller,” and the manager of Harvest signed the Harvest purchase agreement as “Seller.” Once the sales were finalized, TPIC conducted an assessment of Lease 12002 and determined that a sum of $270,000.00 would, be needed to fully restore the site. TPIC secured the amount with a performance bond issued to the State of Louisiana through the Department of Natural Resources. The State of Louisiana then Issued a check in the amount of $225,900.00, the cash balance of the'SSTA, to Harvest.
MP31 filed a petition for damages against Harvest on November 15, 2012, that claimed it was entitled to $86,684.80, forty percent (40%) of the deposited $216,-712.00 [2] in the SSTA. MP31 claimed conversion, unjust enrichment, breach of the JOA, and bad faith on the part of Harvest.
MP31 filed a motion for summary judgment on September 20, 2013. On October 14, 2013, Harvest filed an opposition to MP31’s motion for summary judgment, as well as a cross-motion for summary judgment. The trial court heard MP31’s motion on October 22, 2013. A judgment with reasons was signed on November 22, 2013, denying MP31’s motion for summary judgment. In its reasons, the trial court found that in its purchase and sale agreement with TPIC, MP31 had assigned and transferred various assets, contracts, and rights to TPIC, including any interest it had in the SSTA. In Harvest’s purchase and' sale agreement to TPIC, the trial court found that Harvest had included specific provisions regarding the SSTA that MP31 had not included in its purchase and sale agreement .with TPIC. The |fitrial. court further found that Harvest could •.withdraw the cash , funds in the SSTA to which it was entitled after TPIC had provided full funding for the SSTA. The trial court found that MP31 made no such reservation of rights.
Harvest’s cross-motion was heard on August 20, 2014. ■ The trial court signed a judgment with reasons on October 13, 2014, granting Harvest’s motion for sum-niary judgment and dismissing MP31’s petition. In its reasons, the trial court found that MP31 did not reserve any rights to the SSTA' in its purchase and sale agreement to-TPIC, but that Harvest had included a reservation specific- to the SSTA in its purchase and sale agreement- to TPIC. Moreover, the trial court opined that the settlement agreement never transferred any direct ownership in the SSTA to MP31, since the settlement agreement transferred a “working interest” in the MP31 assets. Also in the trial court’s written reasons was - the- finding that Harvest did not owe MP31 a fiduciary duty under the express or implied terms of the JOA; in fact, the JOA contained express language that a partnership or joint venture did not exist.
MP31 timely filed a suspensive appeal from the trial court’s judgment granting Harvest’s motion for summary judgment and dismissing MP31’s petition.
ASSIGNMENTS OF ERROR
MP31 raises seven assignments of error:
*755 1. The trial court erred in denying and not granting MP31’s motion for summary judgment.
2. The trial court erred in granting and not denying Harvest’s cross-motion’ for summary judgment.
3. The trial court erred in finding that the SSTA and its underlying cash security on deposit were not the property of the JOA’s Joint Account for the benefit of Harvest and MP31 ■ in their respective proportionate ownership shares.
_Jj4. The trial court erred in finding that MP31 did not have or acquire any ownership or rights, title or interest in the SSTA and its underlying cash security, and in failing to determine that the SSTA was an asset of the Joint Account.
5. The trial court' erred in finding that MP31 divested itself of rights, title and interest in the cash security on deposit in the SSTA.
6. The trial court erred in not finding that Harvest’s request and receipt of the cash security on deposit in the SSTA from the State was in its' capacity -as operator of record/“Responsible Party” both for it and MP31, the 60%/40% working interest owners under La. R.S. 30:82(9) and 88(J)(1).
7. The trial court erred in not finding Harvest owed a) a contractual and/or fiduciary duty or obligation to MP31, b) breached same in obtaining the return of the cash security previously on deposit in the SSTA for itself alone, and c) failing to disburse MP31’s 40% proportionate share.
STANDARD OF REVIEW
On appeal, summary judgments are reviewed de novo under the criteria that govern the trial court’s consideration of whether summary judgment is appropriate. The appellate court asks the same questions as does the trial court, in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Pitts v. Fitzgerald, 2001-0543 (La. App. 1 Cir. 5/10/02), 818 So.2d 847, 851. However, the denial of a motion for summary judgment is an interlocutory judgment and is appealable only when expressly provided by-law. But a denial cif a motion for summary judgment may -be reviewed in conjunction with other appeal-able issues for the sake of judicial economy. La. C.C.P. art. 968,1841, 2083.
DISCUSSION
First, we noté that the denial of MP31’s motion for summary judgment is not appealable; however, the granting of Harvest’s motion for. summary, judgment deals with essentially the same legal issues as MP31’s | smotion for summary judgment. Therefore, in the interest of judicial economy, we will review MP31’s motion for summary judgment. See Gilchrist Construction Company, LLC v. State, 13-2101 (La., App. 1 Cir. 3/9/15), 166 So.3d 1045, 1051.
MP31’s first five assignments of error are intertwined with the issue of MP31’s right of ownership in the SSTA security funds. We will therefore discuss the first five assignments of error together.
The determination of whether a contract is clear or ambiguous is a question of law. Moreover, when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate. Sims v. Mulhearn Funeral Home, Inc., *756 2007-0054 (La.5/22/07), 956 So.2d 583, 590. MP31 ciatos in its third and fourth assignment of error that the SSTA’s cash security was an asset of the Joint Account, of which it owned a 40% interest. No part of the JOA states that the SSTA’s security is contained in the Joint Account. In HG’s assignment of right, title, and interest to MP31 and Harvest, the attached Exhibit “A” states “[t]his assignment is subject [to] contracts and agreements bearing against the Interests including, but not limited to,” the SSTA. The assignment does not explicitly state that ownership of the SSTA transferred to either Harvest or MP31 at the time the assignment was executed. Without a clear and unambiguous transfer of ownership interest in the SSTA by HG to MP31 written into HG’s assignment, such an ownership right cannot be implied from any evidence outside of the contract itself. MP31’s assignment of error number three and four lack merit.
After a thorough review of the record, in particular the settlement agreement, the JOA, and the two purchase and sale agreements to TPIC, we Iflfind that the trial court correctly found that MP31 had no ownership interest in the cash security of the SSTA. Thus, we find the trial court properly denied MP31’s motion for summary judgment. We further find the trial court’s , granting of Harvest’s cross motion for summary judgment to be appropriate. Assignment of error number one and two lack merit.
Even if we were to find that there was a genuine issue of material fact as to MP31’s ownership interest in the SSTA, we find that there is no genuine issue of material fact as to MP31’s divestment of whatever ownership rights it may have had in the SSTA.
Section 1.1 of MP31’s purchase and sale agreement with TPIC is titled “Assets to be Sold.” Section l.l(a)(vi) lists as assets to be sold:
[T]o the extent transferable, all licenses, permits, contracts, pooling, unitization and communitization agreements, operating agreements ... and all other agreements of any kind or nature, whether recorded or unrecorded, including, without limitation, those agreements identified in Schedule l.l(a)(vi), BUT INSOFAR AND ONLY INSOFAR as the foregoing directly relate to or are attributable to the ... ownership or operation thereof ...”
Schedule l.l(a)(vi) is a list of contracts. Numbered as (xiii) is “Site Specific Trust Account No. 6-01, dated March 12, 2008, by and between The Harvest Group, LLC, as Transferor, and Harvest Operating, LLC, as Transferee.” Numbered as (xiv) is the “Joint Operating Agreement dated February 1, 2008 by and between Harvest Operating, LLC and MP31 Investments, LLC.” By a plain reading of this purchase and sale agreement, it is clear that MP31 sold to TPIC whatever ownership in the SSTA that may have been conveyed to it by the HG assignment.
The purchase and sale agreement between Harvest and TPIC contains the same “Assets to be Sold” provision, as well as section (vi)’s referral to Schedule l.l(a)(vi). However, the aforementioned language in Parts 2.6 |in(“Security”) and 10.1(a)(vii) and (ix) explicitly made as cause and consideration for the sale the reservation of Harvest’s right to the cash assets in the SSTA upon TPIC’s fully funding the SSTA with its own security or assets. All of Harvest’s other rights of ownership in the SSTA were transferred to TPIC as per Schedule l.l(a)(vi), just as was done with MP31. This glaring contrast between MP31’s agreement with TPIC and Harvest’s agreement with TPIC make it clear that no genuine issue of *757 material fact exists as to whether MP31 divested all of its rights in the SSTA to TPIC. MP31’s fifth assignment of error is without merit.
In its sixth assignment of error, MP31 claims that Harvest, as operator of record and “responsible party” as defined by La. R.S. 30:82(9), was acting on behalf of MP31 when it received the cash security from the SSTA, and therefore should have transferred 40% of the security to MP31, as per La. R.S 30:88(J)(1). However, La. R.S. 30:88(J) does not apply to the instant case.[3] Louisiana Revised Statutes 30:88(J) applies to unusable oilfield sites that are being restored.[4] The record does not indicate that the site was unusable; in fact, TPIC continued to fund the SSTA with a performance bond issued to the State after the cash security was remitted to Harvest.
MP31 argues that since it had a working ownership interest, it was included in the La.R.S. 30:82(9) definition of “responsible party.”[5] Again, there is no indication that the MP31 assets were being abandoned, ceased In operation, or became unusable; therefore, the definition of “responsible party” found in La. R.S. 30:82(9) does not apply in the instant case. MP31 cannot take advantage of these statutory definitions to imply that Harvest, as a “responsible party”, acted on its behalf to secure the security funds from the SSTA. MP31’s sixth assignment of error is without merit.
In its seventh assignment of error, MP31 argues that Harvest owed a contractual or fiduciary duty to MP31 and breached that dutyby refusing to transfer MP31’s 40% share in the SSTA security funds. The essence of the fiduciary duty lies in the, special relationship between the parties. The fiduciaxys duty includes the ordinary duties owed under tort principles, as well-as.a legally imposed duty which requires the fiduciary -to handle the matter “as though it were his own affair.” Beckstrom v. Parnell, 97-1200 (La.App. 1 Cir. 11/6/98), 730 So.2d 942, 947-48 (on rehearing). A partner owes a fiduciary duty to the partnership and to his partners under La. C.C, art. 2809, which provides that a partner may not conduct any activity for himself or on behalf of a third person that is contrary to his fiduciary duty and is prejudicial to the partnership. Riddle v. Simmons, 40,000 (La.App. 2 Cir. 2/16/06), 922. So.2d 1267, 1282, writ denied, 2006-0793 (La.6/2/06), 929 So.2d 1259.
In the instant case, there is specific language in the JOA establishing that neither a partnership nor-a joint-venture of any kind existed between MP31 and Harvest. Article 111(B)’ of the JOA states that all costs and liabilities were to be “borne and paid” according to each party’s respective percentage of ownership. Article VIRA) of the JOA states that liability was to be several among the parties, “not *758 joint or collective.” A partnership is a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or. resources in determined | ^proportions and to collaborate at mutual risk for their common profit or commercial benefit. La. G.C. art. 2801. The JOA does not purport to create a combination of efforts or resources, nor does it indicate any shared risk. On the contrary, the- JOA is very specific that obligations and liabilities are not joint and that only costs were to be paid according to the -60%/40% própor-tions. A written contract for the joint exploration, development, or operation of mineral rights does not create a partnership unless the contract so provides. La. R.S. 31:215. Since neither the JOA nor any other document to which MP31 or Harvest were parties state that they- had entered into a partnership, a partnership did not in fact exist. Thus, Harvest owed no fiduciary duty as a partner to MP31.
Whether a fiduciary duty exists, and the extent of that duty, depends on the facts and circumstances of the case and the relationship of the parties. Scheffler v. Adams and Reese, LLP, 2006-1774 (La.2/22/07), 950 So.2d 641, 647. We can find no circumstance under which a fiduciary duty could have existed between Harvest as fiduciary and MP31 as principal. A fiduciary relationship exists when confidence is reposed on one side and there is resulting superiority and influence on the other. Id. There is no evidence in the record to suggest that there was a relationship of; confidence between MP31 and Harvest, or that one had superiority and influence over the other. Although Harvest had a greater working interést than MP31, Harvest had no direct influence over MP31’s regular operations. Harvest cannot therefore be liable to MP31 for a breach of a contractual fiduciary duty. MP31’s seventh assignment of error lacks meiit.
CONCLUSION
The trial court correctly granted Harvest’s motion for summary judgment. The record contains no genuine issue of material fact as to | ^whether MP31 ever had or retained a right of ownership in the cash security deposited in the SSTA. The settlement agreement, the JOA, and the purchase and sale agreement between MP31 and TPIC do not contain any language that explicitly indicates such ownership rights. Further, there is no evidence of a partnership or a joint venture between MP31 and Harvest that would indicate Harvest owed a fiduciary duty to MP31.
DECREE
The judgment of the Twenty-Second Judicial District Court granting summary judgment in favor of Harvest Operating, LLC, and dismissing the petition of MP31 Investments, LLC, is affirmed. All costs of this appeal are assessed to MP31 Investments, LLC.
AFFIRMED.
McDONALD, J., concurs.
McCLENDON, J., concurs with reasons.

. Pursuant to La. R.S. 30:88(A), if an oilfield site is’ transferred from one party to another, a site-specific trust account may be established to separately account for each such site for the purpose of providing a source of funds for site restoration of that oilfield site at such time in the future when restoration of that oilfield site is required.

. According to Harvest’s brief, the amount in the SSTA had increased from $216,712.00 to $225,900.00 due to the accrual of interest. However, MP31 seeks. 40% of $216,712.00. ’No evidence in the record explains this discrepancy, nor does the discrepancy have any bearing on our analysis.

. Louisiana Revised Statutes 30:88(J) states, in pertinent part: “For unusable oilfield sites, after site restoration has been completed and approved by the [OOC] assistant secretary, funds from a site-specific trust account shall be disbursed as follows: (1) The balance of the account existing in the site-specific trust account will be remitted to the responsible party.”

. Louisiana Revised Statutes 30:82(12) defines an "unusable oilfield site” as "an oilfield site which has no continued useful purpose for the exploration, production, or development of oil or gas and. for which a responsible party can be located.”

.Louisiana Revised Statutes 30:82(9) states, in pertinent part: "R&ponsible parly means ■the operator of record ..’. who last operated the property on which the oilfield site is located at the time the site is about to be abandoned, ceases operation, or becomes an unusable oilfield site, and that operator’s partners and working interest owners of that oilfield . -site,” : '