STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2025 CA 0035

KEVIN COPE AND ROGER LAINE

VERSUS

BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY
AND A&M COLLEGE, TEACHERS RETIREMENT SYSTEM OF
LOUISIANA

JUDGMENT RENDERED:     JUL 0 3 2025

* * * * * * *

Appealed from the Nineteenth Judicial District Court
Parish of East Baton Rouge • State of Louisiana
Docket Number 633,758 • Section 26

The Honorable Ronald R. Johnson, Presiding Judge

* * * * * * *

Jill L. Craft
W. Brett Conrad, Jr.
Baton Rouge, Louisiana

COUNSEL FOR APPELLANTS
PLAINTIFFS—Kevin Cope and Roger
Laine

Richard F. Zimmerman, Jr.
Madaline King Rabalais
Jennifer Aaron Hataway
Baton Rouge, Louisiana

COUNSEL FOR APPELLEE
DEFENDANT—Teachers' Retirement
System of Louisiana

* * * * * * *

BEFORE: THERIOT, HESTER, AND EDWARDS, JJ.

**EDWARDS, J.**

The district court granted a motion for partial summary judgment filed by Defendant, Teachers' Retirement System of Louisiana ("TRSL"), and dismissed Plaintiffs' claims against TRSL for breach of fiduciary duty. That judgment was certified as final pursuant to La. C.C.P. art. 1915(B), and Plaintiffs appealed. For the following reasons, we affirm.

## BACKGROUND

The TRSL Pension Plan, the default retirement plan for teachers in the State of Louisiana, was established in 1936 as a "qualified defined benefit plan." See La. R.S. 11:702(A) & (B); La. R.S. 11:721. The TRSL Pension Plan requires matching contributions from employee and employer. See La. R.S. 11:884; La. R.S. 11:885. Those contributions are managed and controlled by the Board of Trustees of the TRSL ("the TRSL Board"), which has the full power to invest available funds on behalf of TRSL members. See La. R.S. 11:834(B); La. R.S. 11:851(A). The TRSL Pension Plan provides benefits to vested members using a mathematical formula based on the employee's years of service. See La. R.S. 11:768.

In 1989, the Louisiana legislature introduced the Optional Retirement Plan ("ORP") as an alternative to the TRSL Pension Plan.[1] In contrast to the TRSL Pension Plan, the ORP is a defined-contribution plan, which means the ultimate value of the ORP is directly related to the total sums contributed by employee and employer and any investment gains and losses. See LAC 58:III.1505(J) & (K).[2] Any employee electing to participate in the ORP agrees that the benefits payable to

---

[1] The purpose of the ORP is to provide retirement and death benefits to the participants while affording the maximum portability of these benefits to the participants. La. R.S. 11:922. Participation in the ORP is irrevocable. See La. R.S. 11:925(A); LAC 58:III.1507(A).

[2] ORP participants remain eligible to participate in the Office of Group Benefits programs only if the participant has accumulated the total number of years of creditable service that would have entitled him to receive a retirement allowance from the TRSL Pension Plan. See La. R.S. 11:929(C).

participants are not the obligations of the State of Louisiana or TRSL; rather, benefits and other rights of the ORP are the liability and responsibility solely of the ORP participant's chosen provider(s). La. R.S. 11:929(A).

Despite being separate and distinct from the TRSL Pension Plan, the ORP is maintained and administered by TRSL. See La. R.S. 11:923; LAC 58:III.1505(N). ORP participants choose a "provider"—one of three companies selected by the TRSL Board based on statutorily established criteria—and plan contributions are invested in one or more funding vehicles offered by the chosen provider at the direction of each participant. See La. R.S. 11:924; La. R.S. 11:927; LAC 58:III.1505(G). Participant employees contribute monthly to the ORP the same amount the participant would be required to contribute to the TRSL Pension Plan if the participant were a member of that retirement plan.[3] See La. R.S. 11:927(A). Thereafter, the entirety of the ORP participant's contribution, less the participant's share of a monthly fee established by the TRSL Board to cover the cost of administration and maintenance of the ORP, is remitted by TRSL to the provider for application to the participant's account. See La. R.S. 11:927(A).

The amount of the employer's contribution under the ORP is dictated by date. Prior to July 1, 2014, each employer contributed to TRSL on behalf of each ORP participant the same amount it would have contributed if the participant had been a member of the TRSL Pension Plan. La. R.S. 11:927(B)(1). Upon receipt of the employer's contribution, TRSL was mandated to pay to the participant's provider an amount equal to the employer's portion of the normal cost contribution determined annually by the Public Retirement Systems' Actuarial Committee for application to the participant's account. La. R.S. 11:927(B)(1). TRSL was statutorily authorized to "retain the balance of this contribution for application to the unfunded accrued

_____

[3] That amount is established in La. R.S. 11:873(1)(a).

3

liability [("UAL")]"[4] of TRSL. La. R.S. 11:927(B)(1). Beginning July 1, 2014, the employer's contribution on behalf of each ORP participant to be remitted to the provider is determined by a mathematical formula. See La. R.S. 11:927(B)(2). However, TRSL remains authorized to retain the balance of the employer's contribution for application to the UAL. La. R.S. 11:927(B)(2)(f).

## PROCEDURAL HISTORY

Kevin Cope and Roger Laine ("Plaintiffs") are professors at Louisiana State University and A&M College ("LSU"). Plaintiffs were offered participation in and elected to enroll in the ORP upon its creation. On September 23, 2014, Plaintiffs filed a petition for declaratory relief against TRSL and LSU. In their petition, Plaintiffs primarily focused on their contribution to TRSL's UAL. According to Plaintiffs, TRSL began "siphoning off" a large percentage of LSU's contributions to their respective ORPs to apply to TRSL's UAL although Plaintiffs will derive no benefit from the TRSL Pension Plan. Plaintiffs alleged that, as a result, they began receiving a far lower percentage of LSU's contributions to their retirement, which caused the ORP to fall outside of the definition of a qualified replacement plan for Social Security. Therefore, Plaintiffs prayed for declaratory judgment declaring that (1) LSU must pay and withhold from their earnings the requisite Social Security contributions until they receive the minimum contributions necessary for LSU to claim exemption from Social Security; and (2) TRSL has no right to impose UAL expenses upon Plaintiffs or any ORP participant.

The district court permitted Plaintiffs to file an amended petition in March 2015. In addition to the allegations made in their original petition, Plaintiffs also alleged TRSL, as plan administrator of the ORP, breached its fiduciary duty to

---

[4] The UAL is the debt owed by the state to fully fund its retirement systems. See **Retired State Employees Ass'n v. State**, 2013-0499 (La. 6/28/13), 119 So.3d 568, 576 n.5.

4

Plaintiffs by failing to contract with financial management companies that align with the needs and interests of ORP participants. Plaintiffs prayed for an order:

1. Declaring the diversion of Plaintiffs' contributions to pay for the UAL of the TRSL Pension Plan unconstitutional;

2. Declaring TRSL to cease the diversion of Plaintiffs' contributions to pay for the UAL;

3. Declaring the ORP is not a meaningful and comparable equivalent Social Security replacement plan as required by law and is therefore invalid and unconstitutional; and

4. Declaring the relative rights and responsibilities between Plaintiffs, as ORP participants, LSU, and TRSL, including entitlement to the diverted UAL monies and whether TRSL and LSU have complied with the Louisiana Constitution and La. R.S. 11:921, *et seq.*

TRSL filed an answer to Plaintiffs' amended petition on January 13, 2016. Therein, TRSL generally denied all allegations of the amended petition and asserted affirmative defenses, including that it complied with all federal and state rules, regulations, and laws relating to Plaintiffs' ORPs. In 2023, TRSL filed three motions for partial summary judgment, each addressing one of the three claims raised against it in Plaintiffs' petition: (1) whether the UAL contributions are unconstitutional; (2) whether the ORP meets the minimal requirements of a Social Security replacement plan; and (3) whether the TRSL Board breached its fiduciary duty to Plaintiffs as ORP administrator. Pertinent to this appeal is TRSL's motion for partial summary judgment as to whether TRSL breached its fiduciary duty to Plaintiffs ("TRSL's motion").[5]

---

[5] The judgments on TRSL's other two motions for partial summary judgment are also pending on appeal before different panels of this court. See 2025 CA 0034 (regarding whether the ORP meets the requirements of a Social Security replacement plan) and 2025 CA 0036 (regarding the constitutionality of ORP participants' UAL contributions).

In its motion, TRSL argued that its alleged breach of fiduciary duty is unsupported and fully contradicted by the opinion of the only expert in the case, Keith Brainard. TRSL also pointed out that there is no evidence of fraud, breach of trust, or action outside the limits of TRSL's statutory authority nor is there any evidence of damages attributable to the alleged breach of fiduciary duty. In support of its motion, TRSL attached excerpts from Plaintiffs' depositions and Mr. Brainard's affidavit, attached to which were his CV and expert report.

Plaintiffs opposed TRSL's motion. Plaintiffs claimed they suffered substantial damages, namely loss of compensation for services rendered, retirement, and earnings on their investments resulting from (1) portions of their paychecks being diverted to fund the UAL of the TRSL Pension Plan; (2) collection of a 0.05% fee, ostensibly for administration of the ORP but used to pay TRSL's litigation fees, programming, software expenses, and employee wages; (3) imprudent selection of providers for the ORP; and (4) failure to afford ORP participants a meaningful opportunity for input. Plaintiffs attached the following exhibits in opposition to TRSL's motion: excerpts from Plaintiffs' depositions, Plaintiffs' affidavits, and deposition excerpts from several LSU and TRSL employees.

The district court held a hearing on TRSL's motion on April 3, 2024. At the conclusion of the hearing, the district court took the matter under advisement. On May 1, 2024, the district court signed a judgment granting TRSL's motion and dismissing Plaintiffs' breach of fiduciary duty claim against TRSL. On June 25, 2024, the district court signed an order granting Plaintiffs' motion to designate that judgment as final under La. C.C.P. art. 1915(B). This timely appeal followed,[6] in which Plaintiffs assert the district court erred by granting TRSL's motion despite the

---

[6] Plaintiffs filed a notice of devolutive appeal on June 21, 2024. The district court granted Plaintiffs a devolutive appeal by order dated June 25, 2024. The district court also designated the record on appeal upon Plaintiffs' request.

6

existence of genuine issues of material fact as to whether TRSL breached its fiduciary duties to Plaintiffs.

## APPELLATE JURISDICTION

In the present appeal, the district court designated the judgment as a final judgment pursuant to La. C.C.P. art. 1915(B)(1).[7] However, a district court's designation of a judgment as final is not determinative. **Hernandez v. Excel Contractors, Inc.,** 2018-1091 (La. App. 1 Cir. 3/13/19), 275 So.3d 278, 285. As an appellate court, we are obligated to determine whether the district court properly designated the judgment as final pursuant to Article 1915 and to recognize any lack of jurisdiction if it exists. The appellate court's jurisdiction to decide an appeal hinges on whether the certification was proper. **Hernandez,** 275 So.3d at 285. Because the district court gave no explicit reasons for the designation in this case, we must review that determination *de novo* on the record before us. **Hernandez,** 275 So.3d at 285 (citing **R.J. Messinger, Inc., v. Rosenblum,** 2004-1664 (La. 3/2/05), 894 So.2d 1113, 1122-23).

In determining whether a judgment is properly designated as final for purposes of an immediate appeal, a court must always keep in mind the historic policies against piecemeal appeals. **Hernandez,** 275 So.3d at 285-86. As set forth in **R.J. Messinger, Inc.,** the following factors should be considered in determining whether the district court's certification of a partial judgment was appropriate: (1) the relationship between the adjudicated and non-adjudicated claims; (2) the likelihood that review could be mooted pending future developments in the district court; (3) the likelihood that the reviewing court might be required to consider the

---

[7] Louisiana Code of Civil Procedure 1915(B)(1) states that when a court renders a partial summary judgment as to one or more but less than all the claims, demands, issues, or theories against a party, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay. In the absence of such a determination and designation, any such order or decision shall not constitute a final judgment for the purpose of an immediate appeal. La. C.C.P. art. 1915(B)(2).

same issue a second time; and (4) miscellaneous factors including delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and other similar factors. **Hernandez**, 275 So.3d at 286.

Applying the **R.J. Messinger, Inc.** factors to this case, we find there is no just reason to delay review of the district court's grant of TRSL's motion. As of the date of certification, all of Plaintiffs' claims against TRSL were dismissed. Therefore, there is no likelihood that review could be mooted pending future developments in the district court or that this court might be required to consider the same issue a second time. Since review of TRSL's motion is warranted at this stage, we proceed to the merits.

## SUMMARY JUDGMENT

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). In ruling on a motion for summary judgment, the court's role is not to evaluate the weight of the evidence or to make a credibility determination, but instead to determine whether there is a genuine issue of material fact. **Ellis v. Circle L Trucking, L.L.C.**, 2021-0457 (La. App. 1 Cir. 12/30/21), 340 So.3d 985, 988. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, summary judgment is appropriate. **Ellis**, 340 So.3d at 988-89. Moreover, ultimate or conclusory facts and conclusions of law are not to be utilized on a summary judgment motion. **Ellis**, 340 So.3d at 989.

The initial burden of proof is on the party filing the motion for summary judgment. See La. C.C.P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate

8

all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1). Thereafter, summary judgment shall be granted unless the adverse party produces factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1).

Appellate courts review the granting of a summary judgment *de novo* using the same criteria governing the district court's consideration of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. **Trombettas v. Williams**, 2023-0250 (La. App. 1 Cir. 9/15/23), 372 So.3d 360, 365 (citing La. C.C.P. art. 966(A)(3)), writ denied, 2023-01532 (La. 1/17/24), 377 So.3d 249.

## DISCUSSION

The issue before the court as identified by the mover is whether TRSL breached a fiduciary duty to Plaintiffs as administrator of the ORP.[8] As the mover on the motion for summary judgment, TRSL bore the initial burden of proof. See La. C.C.P. art. 966(D)(1). However, because TRSL would not bear the burden of proof at trial, it was not required to negate all essential elements of Plaintiffs' claim. Rather, it was required to point out an absence of factual support for the element of breach put at issue in its summary judgment motion. See La. C.C.P. art. 966(D)(1) & (F).

The essence of the fiduciary duty lies in the special relationship between the parties. The fiduciary's duty includes the ordinary duties owed under tort principles, as well as a legally imposed duty that requires the fiduciary to handle the matter "as

---

[8] A summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time. La. C.C.P. art. 966(F).

9

though it were his own affair." **MP31 Investments, LLC v. Harvest Operating, LLC**, 2015-0766 (La. App. 1 Cir. 1/22/16), 186 So.3d 750, 757. Whether a fiduciary duty exists, and the extent of that duty, depends on the facts and circumstances of the case and the relationship of the parties. **MP31 Invs.**, 186 So.3d at 758.

A cause of action for breach of fiduciary duty requires the plaintiff to prove fraud, breach of trust, or an action outside the limits of the fiduciary's authority. **Matter of Succession of Barbier**, 2023-1321 (La. App. 1 Cir. 9/3/24), 395 So.3d 357, 367. Mere negligence is not enough. See **Blank v. Equisol, L.L.C.**, 2014-1462 (La. App. 1 Cir. 6/18/15), 2015 WL 3824835, *6 (unpublished).

TRSL asserted in its motion that Plaintiffs will be unable to carry their burden of proof to establish a breach of fiduciary duty because Plaintiffs did not have any evidence of fraud, breach of trust, or action outside the limits of TRSL's statutory authority. In support of its motion, TRSL attached the affidavit and expert report of Keith Brainard, the research director at the National Association of State Retirement Administrators and an expert in state retirement plans, including the duties of those who administer and manage such plans. Mr. Brainard stated that TRSL's duties include establishing the ORP and selecting providers who can fulfill the basic objectives of providing a retirement benefit: to support the ability of employers to attract and retain qualified employees and to promote the ability of employees to accumulate a sound retirement benefit. Mr. Brainard opined that TRSL fulfilled its duty to ORP participants by choosing three well-known national providers that offer a prudent selection of investment options with appropriate rates of return and monitoring those providers through the employ of a third-party consultant ("Mercer") that provides annual updates to the TRSL Board.

Based on our *de novo* review of the evidence offered by TRSL in support of its motion for summary judgment, we find Mr. Brainard's expert opinion is sufficient to point out that there was an absence of factual support for Plaintiffs' claim that

TRSL breached its fiduciary duty to them. Consequently, the burden shifted to Plaintiffs to produce factual support sufficient to establish that they would be able to satisfy their evidentiary burden of proof at trial or that TRSL was not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1).

In opposition to TRSL's motion, Plaintiffs argued that TRSL breached its fiduciary duty to Plaintiffs under ORP-specific fiduciary law and general, common law fiduciary duties in the following ways: (1) diverting LSU's contribution to fund the UAL despite a lack of any corresponding benefit to Plaintiffs; (2) charging Plaintiffs a 0.05% "maintenance fee" to pay for expenses unrelated to the ORP and from which they derive no benefit; (3) denying Plaintiffs an opportunity for meaningful participation in TRSL decision-making related to the ORP; and (4) failing to ensure that the rights and benefits offered by the providers selected for the ORP align with the needs and interests of plan participants. We will address each of these assertions individually.

## UAL Payments

Louisiana Revised Statutes 11:927 governs LSU's contribution for ORP participants. Pursuant to La. R.S. 11:927(B), LSU was required to pay to TRSL "the same amount it would have contributed if the participant had been a member of [the TRSL Pension Plan.]" Thereafter, TRSL must pay the statutorily mandated amount to the participant's provider, and TRSL "shall retain" the balance of LSU's contribution for application to the UAL. See La. R.S. 11:927(B).

The constitutionality of La. R.S. 11:927 is the subject of a separate motion for partial summary judgment filed by TRSL and is not at issue in this appeal.[9] Therefore, for purposes of this motion, we find TRSL was acting as it is statutorily mandated related to the UAL. Plaintiffs do not allege that TRSL did not pay the

_____

[9] See 2025 CA 0036.

statutorily mandated amount to their providers, nor do they offer any evidence to establish same. As such, we find this argument meritless.

## ORP Maintenance Fee

Louisiana Revised Statutes 11:921(B) limits the costs borne by ORP participants to only the "actuarial cost of participating in the [ORP]." In addition, LAC 58:III.1505(F) states, in pertinent part:

> [N]o amount held under the plan will ever inure to the benefit of the plan sponsor, any employer, the plan administrator, the ORP provider or any successor of any of them, and all plan investments and amounts will be held for the exclusive purpose of providing benefits to the plan's participants and their beneficiaries. Notwithstanding anything in the plan to the contrary, plan assets shall not be used for or diverted to purposes other than for the exclusive benefit of participants, beneficiaries, and alternate payees before the satisfaction of all liabilities to participants, beneficiaries, and alternate payees, except that payment of taxes and administration expenses may be made from the plan assets as provided by the plan or permitted by applicable law.

See also LAC 58:III.1505(H) ("At no time shall the plan assets be used for, or diverted to, any person other than for the exclusive benefit of the employees and their beneficiaries and defraying reasonable expenses of administering the plan[.]").

Mr. Lacour, an employee of TRSL, explained that the 0.05% maintenance fee charged to ORP participants covers Mercer's fee, any litigation costs, staff time, programming for ORP participants, the purchase of software, and the like. Plaintiffs allege that they derive no benefit from these expenses, and in the case of litigation expenses, the expenditure is directly contrary to their exclusive best interests. Accordingly, Plaintiffs assert TRSL breached its fiduciary obligations to them by diverting their money to pay the 0.05% fee.

The Louisiana Revised Statutes and Louisiana Administrative Code state that a monthly fee established by TRSL may be deducted from the employee contribution to the ORP to cover the cost of administration and maintenance of the ORP. See La. R.S. 11:927(F)(1); LAC 58:III.1509(B); LAC 58:III.1523(B). Similar to our conclusion regarding the UAL, we find TRSL was acting within its statutory

12

authority when imposing the 0.05% fee on ORP participants. Plaintiffs failed to offer any evidence to establish that TRSL's imposition of the 0.05% fee is impermissible or used in a way that does not contribute to the administration and maintenance of ORP. To the contrary, Mr. Lacour testified that "there are people in TRSL that spend significant amounts of time on [the] ORP" in departments such as accounting and employer services. As such, we find this argument meritless as well.

## Participation in ORP Decision-Making

Plaintiffs cite the following as a deprivation of meaningful participation in the ORP decision-making process: (1) hiring providers and a third-party consultant without giving ORP participants an opportunity to provide input; (2) failing to provide ORP participants with information about the providers and third-party consultant; (3) unilaterally limiting the financial options available to ORP participants in derogation of the needs and wishes of the participants; (4) failing to notify participants, specifically Dr. Cope, of all the financial options available to him; (5) hiring providers with limited financial options; and (6) failing to consider complaints by ORP participants such as Dr. Cope regarding the rates of returns and financial options.

### *General Decision-Making*

First, any allegation that Plaintiffs were not provided an opportunity for meaningful input is an unfounded factual conclusion. Mr. Brainard noted the TRSL Board meets monthly, and the meetings are open to the public. Mr. Brainard also stated that the meeting agendas are posted prior to the meetings of the TRSL Board. While Dr. Cope contends that attending these meetings would be "a waste of time," he also admitted that he has not attended a TRSL Board meeting although they are open to the public, and therefore, he does not know if public comment is allowed at these meetings.

13

## *Selection of Providers*

The process for selecting providers for the ORP is outlined in La. R.S. 11:924. Pursuant to La. R.S. 11:924, the TRSL Board shall select no more than three providers, and in setting the criteria for this selection, the TRSL Board shall consider, among other things, the following: (1) portability of contracts; (2) efficacy of the contracts in recruitment and retention of employees; (3) nature and extent of benefits to be provided; (4) relation of benefits to the amount of contributions; (5) suitability of benefits to the needs and interests of participants; and (6) ability of the company to provide such benefits. See La. R.S. 11:924.

Dr. Cope expressed his displeasure with TRSL only offering three providers for the ORP and stated that he would like to see more variety. However, La. R.S. 11:924 does not permit more than three ORP providers and does not mandate ORP participant input in selecting providers.[10] Mr. Brainard opined in his expert report that the number of providers and the particular providers selected by TRSL was appropriate. Mr. Brainard noted, as did the former Executive Director of TRSL ("Ms. Westgard"), that TRSL offered three providers since the inception of the ORP. According to Mr. Brainard, this is above the average number of providers for universities in the Southeastern Conference offering an ORP.

Further, there is no legislative mandate as to how many investment options should be offered by each provider. Dr. Cope testified that when he initially enrolled in the ORP at LSU, there was a limited selection of S&P index funds available to him through his provider, but he did not consider switching to a different provider because he was aware he was "limited" by TRSL. Even now, Dr. Cope stated that his provider does not offer investment funds that interest him. While it is true that

---

[10] To the extent Plaintiffs assert they should be involved in the election of the TRSL Board members, the configuration of the TRSL Board is specified by statute; La. R.S. 11:822(A) only provides for one elected member from TRSL and does not provide for an ORP participant member.

the TRSL Board voted to decrease the number of funds available through the ORP providers to ORP participants, Mr. Brainard stated that despite the reduction in fund options, the ORP offers significantly more than the average fund options provided by defined-contribution plans. Additionally, Mr. Brainard stated all three providers selected by TRSL for the ORP are national in scope and well-known as defined-contribution plan providers. Mr. Brainard concluded that the number of investment options available through the three ORP providers was appropriate.

Plaintiffs did not introduce any evidence to refute Mr. Brainard's opinions. Dr. Cope's belief that the ORP should offer more than three providers with more investment options is a conclusory fact or conclusion of law and may be not be utilized on summary judgment. See **Ellis**, 340 So.3d at 989.

### *Selection of Third-Party Consultant*

As to input in selecting a third-party consultant, Mr. Lacour testified that the 0.05% administration fee is used to pay Mercer. Thus, the hiring of a third-party consultant falls within the statutory authority granted to TRSL as it relates to the administration and maintenance of the ORP. See La. R.S. 11:927(F)(1); LAC 58:III.1509(B); LAC 58:III.1523(B).

### **Rates of Return**

Lastly, Plaintiffs allege the TRSL breached its fiduciary duty to Plaintiffs by contracting with providers that have a rate of return substantially less than the TRSL fund.[11] Dr. Cope testified that his personal rate of return was approximately 4-6% year-in, year-out on average, while long-term performance of the stock market is 7-9% per year.

However, Dr. Cope admitted that he started the ORP with all his funds in a money market fund, which is a very conservative investment that pays a relatively

---

[11] Dr. Laine's rate of return is not discussed herein because he testified that he has no issues with the rate of return he has earned on his investments.

low rate of return. Dr. Cope stated that he did not know his provider offered other options, and it was eight or nine years after enrolling in the ORP before he began to invest in more risky funds that would result in a higher rate of return. Dr. Cope stated he began to see a 5-7% rate of return in the 2000s, once he invested in other funds.

A defined-contribution plan such as the ORP features individual accounts owned by plan participants, and the value of the plan is determined by the sum of contributions made by the employee and their employer plus any investment earnings or losses on those contributions. See LAC 58:III.1505(K). As previously noted, Plaintiffs do not allege that TRSL did not apply their own contributions or LSU's contributions to their ORPs in accordance with La. R.S. 11:927. Therefore, the performance of Plaintiffs' ORPs directly relates to the earnings and losses of their chosen investments.

TRSL's expert, Mr. Brainard, explained that "[i]nvestment performance for any investor will be determined mostly by the way assets are distributed among the available asset classes and . . . the available fund options." Thus, an investor who places all or much of their portfolio in a money market fund will, over time, see performance below that of an investor who allocates all or most assets into riskier investment options, which generate a higher rate of return. Based on quarterly statements provided by Plaintiffs, Mr. Brainard opined Plaintiffs' returns "appear to be consistent with the decisions they made as to how to invest their retirement assets" and noted that both Dr. Cope and Dr. Laine outperformed the Callan median public pension fund.[12] Again, Plaintiffs did not offer any evidence to contradict Mr. Brainard's contention that the rates of return on Plaintiffs' investments were

---

[12] Callan is a national investment consultant to institutional investors, such as pension funds, endowments, etc. The Callan figure illustrates the median, or midpoint, investment return for each year of the universe of public pension funds. Callan's universe includes more than 200 public pension funds.

16

appropriate for the types of investment funds utilized over the course of Plaintiffs' careers.

Mr. Brainard also noted that the rates of return on funds offered by the ORP providers as a whole appear to be consistent with the investment lineups of other defined-contribution plans. He stated, "As a group, nothing about the funds' performance appears to be extraordinary or unusual in the context of defined[-]contribution plan investment offerings." Additionally, Ms. Westgard testified that TRSL hired Mercer to evaluate all current providers and give recommendations. Since 2009, TRSL, with the help of Mercer, has conducted annual reviews of the providers' performances. These reviews are presented in writing and discussed at meetings of the TRSL Board. The annual reviews address the providers' performance in a wide range of areas, including service levels[13] and fund investment performance, and are accompanied with a comment from Mercer classifying the fund's performance as satisfactory, being "watched," or recommended for removal or replacement. Mercer's analyses include a comparison of each fund's performance with its relevant universe of funds and its benchmark (a measurement comparing the fund's performance). For these reasons, we find no merit to Plaintiffs' argument that TRSL breached its fiduciary duty to Plaintiffs by contracting with providers that have a rate of return substantially less than the TRSL fund.

## CONCLUSION

Plaintiffs did not produce any evidence sufficient to demonstrate a genuine issue of material fact as to whether TRSL breached its fiduciary duty to Plaintiffs.[14]

---

[13] In order to evaluate service levels, providers are required to periodically survey the participants regarding their satisfaction with the provider; to communicate with participants; to resolve designated thresholds of participant complaints with accepted timeframes; to inform TRSL of written complaints; and to respond to certain requests from participants within designated timeframes. Mr. Brainard said these services and reporting requirements are standard in the defined-contribution plan industry.

[14] We note that many of the alleged breaches asserted by Plaintiffs are the duty of the ORP providers, not TRSL. According to La. R.S. 11:929(A), participants in the ORP "shall agree that the benefits payable to participants are not the obligations of the state of Louisiana or [TRSL], and

Plaintiffs relied solely on their own testimony containing conclusory facts and conclusions of law in opposing TRSL's motion; however, this is insufficient to create a genuine issue of material fact on a summary judgment motion. See **Ellis**, 340 So.3d at 989. As such, we find they did not carry their burden of proof on summary judgment.

## DECREE

The district court's May 1, 2024 judgment granting the "Motion for Partial Summary Judgment Regarding Whether the Teachers' Retirement System of Louisiana Board Breached its Fiduciary Duty" filed by Defendant, Teachers' Retirement System of Louisiana, and dismissing Plaintiffs' claim that the Board of the Teachers' Retirement System of Louisiana breached its fiduciary duty is affirmed. All costs of this appeal are assessed to Plaintiffs, Kevin Cope and Roger Laine.

**JUDGMENT AFFIRMED.**

---

that such benefits and other rights of the [ORP] are the liability and responsibility solely of the designated [provider.]" See also LAC 58:III.1521(A). Therefore, any allegations related to the actions of Plaintiffs' chosen providers are not evidence of a breach of a fiduciary duty by TRSL.